**INDEPENDENT BANKERS ASSOCIATION OF AMERICA, Plaintiff,**

v.

**FEDERAL HOME LOAN BANK BOARD, et al., Defendants.**

Civ. A. No. 82-0508.

United States District Court, District of Columbia.

Aug. 4, 1982.

**24**

Leonard J. Rubin, Christine E. Carnavos, Washington, D.C., for plaintiff.

Harvey Simon, John E. Gunther, Jonathan K. Heffron, Washington, D.C., for defendants.

## MEMORANDUM

GESELL, District Judge.

This case requires the Court to determine whether the Federal Home Loan Bank Board ("Board") has discretion to approve branches established by federally regulated savings and loan associations ("S & Ls") in states other than the association's state of domicile, pursuant to Statements of Policy issued by the Board in 1981. Independent Bankers Association of America ("Independent Bankers") contends that interstate branching by S & Ls is prohibited by the Home Owners' Loan Act of 1933, 12 U.S.C. § 1464 *et seq.* ("HOLA") and provisions of the National Housing Act, 12 U.S.C. § 1730a *et seq.* ("NHA"), and that the implementing Statements of Policy were made without complying with the Administrative Procedure Act, 5 U.S.C. § 553 *et seq.* ("APA"). Independent Bankers seeks a declaratory judgment that the Board's past approvals of interstate branches violated the Acts, recision of the Statements of Policy, and an injunction preventing the Board from approving any further interstate branching through mergers or otherwise. Cross-motions for summary judgment have been filed, briefed, and argued. No material facts are in dispute. For reasons stated below, summary judgment must be granted the Board and the complaint dismissed.

Prior to its 1981 Statements of Policy, the Board had limited the branching of S & Ls to the same state, indicating that in general it preferred this practice. On March 23, 1981, the Board approved a new Statement of Policy setting forth detailed guidelines under which, in exceptional cases, the Board indicated it might approve mergers, consolidations, and acquisitions resulting in interstate branch operations in order to prevent the failure of a federally insured institution. The Statement was placed into effect immediately. Shortly following, the Board approved a series of complicated transactions that resulted in the creation of several "interstate" S & Ls with branches in more than one state. The details of those transactions are outlined in the stipulations of fact filed by the parties.

On September 3, 1981, the Board approved a further Statement of Policy indicating that interstate S & Ls could apply to open further branches in those states in which they had acquired branches. Shortly following this announcement, which again went into immediate effect, a number of the approved interstate S & Ls applied to open further branches outside the home office's state.

The Board's actions were undertaken in response to a situation that is reaching crisis proportions—the nationwide deterioration of the savings and loan industry. The problems of the industry result from the difference between current high and volatile rates of interest and the low rates paid on the long-term mortgage portfolios held by S & Ls. That discrepancy results in thousands of S & Ls losing money on a daily basis. The Board is charged with aiding these ailing institutions and feels it must protect its very limited insurance reserves and avoid costly liquidations and payouts by merging the seriously financially weakened S & Ls with the stronger institutions. Such "supervisory" mergers preserve public confidence in the industry and avoid the harms to under or uninsured depositors resulting from liquidation.

It has not always proved possible for the Board to arrange an acceptable "supervisory" merger intrastate. The Board approved 294 mergers in 1981. In some of these cases, intrastate mergers could not be accomplished without substantial cost to the government's limited insurance fund. In the interest of preserving its financial resources so they could be used to the greatest effect, the Board announced the policy of permitting interstate mergers under very narrow circumstances. It is that practice Independent Bankers seeks to challenge, and of course no matter how urgent the need to take appropriate action to ensure the stability of the S & L industry, the Board must act within the limits of the authority Congress has delegated.

Independent Bankers fears the competitive impact of the Board's new policy and alleges that the Board has exceeded its Congressional mandate in approving interstate operations by S & Ls. In support of that contention, Independent Bankers makes three basic arguments.

First, it claims that the HOLA contains no express or implied authority for interstate operation of S & Ls. While the language of the statute does not specifically address the Board's authority to permit interstate branching, it does give the Board exceptionally broad authority to regulate federal S & Ls by providing:

> the Board is authorized, under such rules and regulations as it may prescribe, to provide for the organization, incorporation, examination, operation, and regulation of associations to be known as "Federal Savings and Loan Associations" . . . 12 U.S.C. § 1464(a).

As the Supreme Court has noted in a recent case, "[i]t would have been difficult for Congress to give the Bank Board a broader mandate." *Fidelity Federal Savings & Loan Association v. De La Cuesta*, —— U.S. ——, ——, 102 S.Ct. 3014, 3025, 73 L.Ed.2d 664 (1982). After reviewing the legislative history of the HOLA, the Court went on to state that "references to the Board's broad discretion to regulate the newly created federal savings and loans appear throughout the legislative history. Nowhere is there a sugges-

tion of any intent somehow to limit the Board's authority." *De La Cuesta, supra* at ——, 102 S.Ct. at 3027–28. Despite the absence of any express or implied authority to permit intrastate branching under the HOLA, the law is now well settled that that broad mandate grants the Board complete authority to permit intrastate branching by S & Ls. *North Arlington National Bank v. Kearny Federal Savings & Loan Association,* 187 F.2d 564 (3d Cir.1951), *cert. den.* 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed. 617 (1951); *First National Bank of McKeesport v. First Federal Savings & Loan Association of Homestead,* 225 F.2d 33 (D.C.Cir.1955). While the issue here presented is one of first impression, the mere failure of the HOLA to specifically address the issue of branching—whether intra- or interstate— cannot now be construed to preclude the Board's exercise of branching authority in the interstate area.

Independent Bankers suggests, however, that Congress' silence on that issue gains more significance when viewed in the context of other statutes explicitly prohibiting the interstate operation of commercial banks, mutual savings associations, and S & L holding companies. *See* the National Bank Act, 12 U.S.C. § 36(c); the Bank Holding Company Act, 12 U.S.C. § 1842(d); the National Housing Act, 12 U.S.C. § 1730a(e)(3); and the Home Owners' Loan Act of 1933, 12 U.S.C. § 1464(a)(1). The Court agrees that those statutory provisions add further meaning to Congress' failure to regulate interstate branching by federal S & Ls under the HOLA. However, that added significance works against Independent Bankers' case. If Congress had wished to limit the Board's authority to regulate interstate branching under the HOLA, it clearly could have done so. Congress has continued to leave this issue completely to the Board's discretion. Indeed, Congress has considered *and rejected* proposed legislation designed to limit the Board's discretion in questions of branching policy. H.R. 4710 and S. 2006, 81st Cong., 1st Sess. (1949); S.Rep. No. 1118, 81st Cong., 1st Sess. (1949). As recently as 1978, Congress had the opportunity to address the issue when it amended the HOLA to provide for the federal chartering of mutual savings associations. The amendment specifically provided that the new federal mutual savings associations could operate branches only in the associations' states of domicile. Financial Institutions Regulatory and Interest Rate Control Act of 1978 (Pub.L. No. 95–630, 92 Stat. 3651 *et seq.* (Nov. 10, 1978)). Congress' failure, on this and earlier occasions, to apply similar limitations to federal S & Ls can only be read as a deliberate preservation of the Board's plenary authority to regulate branching policy for federal S & Ls.

Finally, Independent Bankers argues that, even if the issue of branching lies within the discretion of the Board, the Board has exercised that discretion improperly and exceeded its authority because the interstate operations approved by the Board are contrary to Congressional intent and the general policy of maintaining a "dual banking system" of competing state and federally chartered institutions. Independent Bankers contends that, by permitting limited interstate branching of federal S & Ls, "the Bank Board has now embarked on a course which is dramatically and permanently altering the Congressionally-designed, competitively balanced structure of the financial services industry." Plaintiff's Opposition to Defendants' Motion for Summary Judgment at 11 (filed July 22, 1982).

But the philosophy of the dual banking system can have no life beyond that breathed into it by the actual statutes Congress has passed in its pursuit. As noted earlier, the failure of Congress to limit branching of federal S & Ls under the HOLA cannot now be explained away as a simple oversight the legislature would have corrected had it ever been brought to its attention.

Further, the Board has not changed its policies to favor the widespread adoption of interstate branching by all federal S & Ls. Rather, the Board has indicated its willingness to consider interstate branching in those very limited cases where such action is necessary to prevent imminent failure

while avoiding inordinate expense that would deplete government insurance funds. Congress has charged the Board with the task of preserving the financial health and integrity of the savings and loan industry. It may be that Congress has determined that the dual banking concept is inappropriate given the paramount need to preserve the financial integrity of the regulated savings and loan industry. In any case, Independent Bankers has failed to meet the burden of showing that the Board's policy is contrary to any expressed Congressional intent.

Independent Bankers next argues that the Board has approved transactions in violation of § 408(e)(3) of the NHA, 12 U.S.C. § 1730a(e)(3). That statute prohibits the Board, as director and operator of the Federal Savings and Loan Insurance Corporation ("FSLIC"), from approving any acquisition by a savings and loan holding company that would result in that holding company operating federal S & Ls located in more than one state. Independent Bankers argues that, when a step-by-step analysis is made of the mergers, acquisitions, and purchases approved by the Board which resulted in interstate S & Ls, transactions have occurred whereby a company has controlled federally insured institutions in more than one state, in direct violation of the NHA.

■ However, since Independent Bankers has requested only forward-looking injunctive relief, there is some question as to the efficacy of any comment the Court might make with regard to these past transactions. It is clear that the challenged branching policies in no respect necessitate transactions that infringe on the strictures of the NHA. Further, the Court cannot reach the question of the legality of those past transactions for it is without jurisdiction to rule on such matters.

Section 408(k) of the NHA, 12 U.S.C. § 1730a(k), provides that

[a]ny party aggrieved by an order of the [Board, as director of the FSLIC] under this section may obtain a review of such order by filing in the court of appeals of the United States for the circuit in which the principal office of such party is located, or in the United States Court of Appeals for the District of Columbia Circuit, within thirty days after the date of service of such order ... such court shall have jurisdiction, which upon the filing of the record shall be exclusive, to affirm, modify, terminate, or set aside, in whole or in part, the order ...

That provision has been held to constitute the exclusive remedy available to parties seeking review of the Board's actions under § 408 of the NHA. *Fort Worth National Corporation v. Federal Savings and Loan Insurance Corporation,* 469 F.2d 47, 52 (5th Cir.1972); *Harr v. Prudential Federal Savings & Loan Association,* 557 F.2d 751, 754–55 (10th Cir.1977); *Fidelity Financial Corporation v. Federal Savings and Loan Insurance Corporation,* 359 F.Supp. 324, 327 (N.D.Cal.1973). As Judge Wisdom noted in the *Fort Worth* case, "[w]hen Congress has prescribed a particular method of review, that procedure is exclusive" (citing *Whitney National Bank in Jefferson Parish v. Bank of New Orleans,* 379 U.S. 411, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965)). *Fort Worth, supra* at 52.

Independent Bankers nevertheless contends that the district court has jurisdiction to hear their claim because this is a case where the statutory review procedure is inadequate. Judge Wisdom dealt with a similar claim in *Fort Worth.* In that case, the district court concluded that the Court of Appeals had exclusive jurisdiction to view the merits of a FSLIC denial of a proposed S & L acquisition, but nevertheless accepted jurisdiction for the purpose of granting a preliminary injunction. The Court of Appeals reversed, concluding that "[w]e cannot agree with the district court's view that the statutory review procedures were inadequate ... it is beyond question that the Court of Appeals would have been able to issue any type of preliminary relief necessary to protect the rights of the parties." *Fort Worth, supra* at 53. *See Fidelity Financial Corporation, supra* at 327.

Independent Bankers also complains of the manner in which the Board undertook

to approve the challenged interstate acquisitions and made public those approvals. Again, any remedy Independent Bankers seeks can be, and must be, found in the Court of Appeals. "[T]he Court of Appeals [has] exclusive jurisdiction over the merits of the dispute .... Unless it has jurisdiction over the underlying cause of action, a court may not purport to issue preliminary relief in the case." *Fort Worth, supra* at 53. In short only the Court of Appeals has jurisdiction to consider alleged violations of § 408(e)(3) of the NHA and there is nothing in the Board's Statements of Policy that necessarily brings the provisions of that Act into play.

▮ Finally, Independent Bankers alleges that the Board violated the APA by failing to observe the notice and comment period and delay of effective date provided for in 5 U.S.C. § 553(b) and (d). That section provides first that "[g]eneral notice of proposed rule making shall be published in the Federal Register." However, that subsection does not apply

(A) to interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or
(B) when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest. 5 U.S.C. § 553(b).

The statute also provides that "required publication ... shall be made not less than 30 days before [the rule's] effective date." That requirement does not apply to

(1) a substantive rule which grants or recognizes an exemption or relieves a restriction;
(2) interpretative rules and statements of policy; or
(3) as otherwise provided by the agency for good cause found and published with the rule. 5 U.S.C. § 553(d).

The Board's actions were not in violation of the APA because the Statements of Policy in question are exempt as "interpretative rules" and/or "general statements of policy." Moreover, at least in the case of the March 23, 1981 Statement, the agency found with good cause that notice and delay of effective date were contrary to the public interest, and published such finding and the adequate reasons behind it with the rule.

Interpretative rules, unlike legislative rules, are merely an agency's interpretation of a statute it is charged with implementing; they create no law and have no effect beyond that of the statute. *Guardian Federal Savings & Loan Association v. Federal Savings and Loan Insurance Corporation*, 589 F.2d 658, 664 (D.C.Cir.1978); *Pesikoff v. Secretary of Labor*, 501 F.2d 757, 763 n. 12 (D.C.Cir.1974), *cert. den.* 434 U.S. 1033, 98 S.Ct. 766, 54 L.Ed.2d 781 (1978).

The Board has authorized branching by federal S & Ls since 1937. 2 Fed.Reg. 825–26 (May 14, 1937). In 1967, the Board formally adopted and published a Statement of Policy in that area. 32 *Fed.Reg.* 20630–31 (Dec. 21, 1967). Among other comprehensive guidelines, the Statement provided that

[i]t is the Board's policy not to approve the establishment of a branch office by [a federal S & L] in a state other than that where the home office of the association is located.

In 1972, the Board amended that provision to read that "[i]t is the Board's *general* policy" not to approve interstate branching. 37 *Fed.Reg.* 3987 (Feb. 25, 1972) (emphasis added). With this amendment, the Board created the possibility that exceptions to its "general" policy might be made.

On March 23, 1981, the Board clarified the very limited circumstances under which interstate acquisitions would indeed be approved. First, the Statement of Policy requires that the acquisition be pursuant to a "supervisory" action by the Board to prevent the failure of an insured institution; second, the Board must determine that the Board's insurance risk would be reduced by the interstate operation; and third, there must be no otherwise equally desirable intrastate acquisition available that does not

pose a substantially greater insurance risk. 12 C.F.R. § 556.6(a)(3), 46 *Fed.Reg.* 19221–22 (March 30, 1981).

The new Policy Statement is obviously designed to preserve as far as possible the Board's policy of preferring intrastate branching. It simply clarifies those very limited circumstances under which, pursuant to the Board's broad authority over branching policy under the HOLA, interstate acquisitions might be approved. It does so by further defining the scope of the qualifier "general" and clarifying the circumstances under which the Board will permit an exception to its "general" rule. Such clarifications of existing rules are "interpretative" and exempt from the APA notice and delay of effective date requirements. *Garelick Manufacturing Co. v. Dillon*, 313 F.2d 899, 900 (D.C.Cir.1963); *Matter of Worksite Inspection of S.D. Warren, Division of Scott Paper*, 481 F.Supp. 491, 494 (D.C.Me.1979); *Amoco Oil Co. v. Marshall*, 496 F.Supp. 1234, 1238 (S.D.Tex.1980).

The interpretative nature of the September 3, 1981 Statement of Policy is equally clear. This amendment provides that a nationwide S & L created pursuant to a "supervisory" action by the Board can open additional branches in those states outside the S & L's home state where it has already acquired branches. Such branching is subject to the same guidelines and criteria applied to purely intrastate branching. The amendment does nothing more than explain that the Board's existing branching policy will apply as well to the newly-created interstate S & Ls. 12 C.F.R. § 556.5(a)(3)(ii)(b), 46 Fed.Reg. 45120–21 (Sept. 10, 1981).

Both the March 23 and the September 3 Statements of Policy may also be regarded as "general statements of policy" exempt from the requirements of the APA. A general statement of policy "is not finally determinative of the issues or rights to which it is addressed .... A policy statement announces the agency's tentative intentions for the future." *Pacific Gas & Electric Co. v. Federal Power Commission*, 506 F.2d 33, 38 (D.C.Cir.1974). An agency's

pronouncement may be regarded as a statement of policy exempt under the APA if it applies prospectively and leaves the agency and its decision-makers free to exercise their discretion in its application. *Guardian Federal, supra* at 666–67; *American Bus Association v. United States*, 627 F.2d 525, 529 (D.C.Cir.1980). Judge Leventhal in *Guardian Federal* outlined several factors leading to his determination that certain FSLIC regulations were general statements of policy which are also applicable to this case. As in *Guardian Federal* the Board retains discretion to approve or deny an application for interstate branching; the Board's statutory authority is extremely broad; and the challenged provisions serve to fill in the details of a comprehensive regulatory framework. *Guardian Federal, supra* at 666–68. That "[t]he rules are not without some substantive impact ... does not undercut the conclusion that, in essence, they are general statements of policy." *Guardian Federal, supra* at 668. The Board itself describes the provisions in question as "Statements of Policy", 12 C.F.R. § 556. While not determinative, "the agency's own characterization of a particular order provides some indication of the nature of the announcement." *Pacific Gas & Electric, supra* at 39.

Even if the Statement of Policy of March 23 were not an interpretative rule or a general statement of policy, it would be exempt from the notice and delay of effective date requirements of the APA because observance of such requirements would, as the Board observed in the Statement of Policy itself, be contrary to the public interest. It must be recalled that, at the time the Statement of Policy was approved, the Board was approving mergers at a rate of nearly one each day in order to preserve the financial health of the savings and loan industry. As the Board explained in the Statement of Policy, "[a]n immediate effective date is necessary to clarify Board policy regarding interstate acquisitions in supervisory cases and will facilitate the operations of the FSLIC in this area". 46 *Fed.Reg.* 19221–22 (March 30, 1981).

The Board, in exercising its broad discretion over branching policy to preserve the financial integrity of the industry it regulates, is acting within its statutory authority. The consequences of its actions may well have long range implications, as Independent Bankers suggests. Congress can limit the broad discretionary authority it has previously clearly granted the Board if it chooses to do so. But the law in its present form is clear and the Board must prevail—the complaint will be dismissed.