617 F.Supp. 566 (1985)
The DEPARTMENT OF BANKING AND CONSUMER FINANCE OF the STATE OF MISSISSIPPI, Plaintiff,
Gulf National Bank, Merchants Bank & Trust Company, Hancock Bank, Peoples Bank of Biloxi, Bank of Wiggins, the Peoples Bank & Trust Company, and Bank of Mississippi, Plaintiffs-Intervenors,
v.
Joe SELBY, Acting Comptroller of the Currency of the United States and Deposit Guaranty National Bank, Defendants.
Civ. A. No. J85-0698(L).
United States District Court, S.D. Mississippi, Jackson Division.
August 27, 1985.
*567 Edwin Lloyd Pittman, Robert Arentson, Stephen J. Kirchmayr, Office of the Attorney General, Hubbard T. Saunders, Champ Terney, Donald Clark, Jr., Crosthwait, Terney & Noble, Jackson, Miss., for the Department.
G.E. Estes, Jr., Estes & Estes, Gulfport, Miss., for Merchants Bank & Trust.
John M. Harral, White & Morse, Gulfport, Miss., for Hancock, Bank of Wiggins, Peoples, Peoples Bank & Trust and Bank of Mississippi.
W. Joel Blass, Mize, Thompson & Blass, Gulfport, Miss., for Gulf National Bank.
Frank A. Riley, Riley, Weir & Caldwell, Tupelo, Miss., for Bank of MS., Tupelo.
George Phillips (Danny McDaniel), U.S. Atty., Jackson, Miss., David H. White, U.S. Atty., Dept. of Justice, Mark Leemon, Office of Comptroller of the Currency, Washington, D.C., for Comptroller.
Robert C. Cannada, Lawrence J. Franck, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., for Deposit Guaranty.

MEMORANDUM OPINION
TOM S. LEE, District Judge.
Deposit Guaranty National Bank (DGNB) is a federally chartered banking association with its principal office in Jackson, Mississippi. DGNB applied to the Comptroller of the Currency of the United States (Comptroller) for permission to establish a branch office in Gulfport, Mississippi, which is approximately 170 miles from Jackson. On July 9, 1985, following review of DGNB's application and comments submitted by various parties, the Comptroller approved the application. The Department of Banking and Consumer Finance of the State of Mississippi (Department), an agency of the State of Mississippi charged with the responsibility of administering all laws relating to corporations carrying on the banking business in the state,[1] advised the Comptroller during the comment period that approval of the proposed branch would violate Mississippi law. Following approval of the application, the Department brought this action against DGNB and Joe Selby, Acting Comptroller of the Currency of the United States, to enjoin opening of the branch and, following briefing and argument, the court granted the Department's motion for a temporary restraining order. By agreed order, the parties have treated the temporary restraining order as a preliminary injunction pending an expedited briefing schedule and hearing on the merits of the case pursuant to Federal Rule of Civil Procedure 65. Gulf National Bank, Merchants Bank & Trust Company, Hancock Bank, Peoples *568 Bank of Biloxi, Bank of Wiggins, The Peoples Bank & Trust Company and Bank of Mississippi were allowed to intervene as plaintiffs.[2] The parties extensively briefed the issues and the court heard argument August 20, 1985.
The McFadden Act provides in part:
(c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches ... at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks.
* * * * * *
(h) The words "State bank" "State banks," "bank" or "banks," as used in the section, shall be held to include trust companies, savings banks, or other such corporations or institutions carrying on the banking business under the authority of State laws.
12 U.S.C. § 36.
In Mississippi, a state-chartered commercial bank may operate branch banks in the county where its principal office is located, in any county adjacent to the county in which its principal office is located or within a 100-mile radius of the bank's principal office. Miss.Code Ann. §§ 81-7-5 & -7 (1972). Mississippi savings associations, however, may branch statewide. Miss. Code Ann. § 81-12-175 (Supp.1984). The Comptroller determined, based on cases and statutes defining the business of banking in other contexts and a study of the banking industry in Mississippi submitted by DGNB, that savings associations in Mississippi are engaged in the business of banking and are, therefore, "State banks" as defined in § 36(h). The Comptroller concluded that "[n]ational banks in Mississippi may, thus, branch to the same extent as Mississippi savings associations, i.e., statewide." Decision of Comptroller at 31.
The scope of this court's review of the Comptroller's decision is governed by 5 U.S.C. § 706 which provides in part:
The reviewing court shall
(2) hold unlawful and set aside agency action, findings, and conclusions found to be
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
See Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973). Only questions of fact are subject to the "arbitrary and capricious" standard; "questions of law ... are freely reviewable by the courts." Coca-Cola Co. v. Atchison, Top. & S.F. Ry. Co., 608 F.2d 213, 218 (5th Cir.1979). Review is further limited to the administrative record made in the proceedings before the Comptroller. Camp v. Pitts, 411 U.S. at 142, 93 S.Ct. at 1244.
The Comptroller's decision involves questions of law regarding construction of the controlling statute and questions of fact regarding the Comptroller's determination that Mississippi savings associations carry on the banking business. Because this court concludes that the Comptroller's construction of § 36(h) is not in accordance with law, consideration of his factual findings is unnecessary.
Defendants contend that the Comptroller's interpretation of § 36(h) is in accordance with law. The § 36(h) definition, according to the defendants, is a functional one, to be applied by determining what entities carry on the business of banking; reference in § 36(h) to the "authority of state laws" is intended only to distinguish state from national banks and not to impose a state law definition of the banking business. Defendants rely on First National Bank in Plant City v. Dickinson, *569 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969), wherein the United States Supreme Court stated that federal law governs the § 36(f) definition of "branch"[3] since the use of a state law definition in that regard would allow the states to be "the sole judges of their own powers" under the McFadden Act. Id. at 133, 90 S.Ct. at 343.
Plaintiffs argue that § 36(h) includes as state banks only those entities which are expressly chartered to carry on the banking business by state law. Section 81-3-3 of the Mississippi Code Annotated provides in part:
Every corporation organized under the laws of this state for the purpose of conducting or carrying on a commercial banking business, or the business of a savings bank, or trust company, or the exercise of trust powers as defined in this title, or any combination thereof, shall be subject to supervision by the department of bank supervision and the state comptroller, and to assessments for the maintenance of said department as provided by law.
State-chartered savings associations are not under the supervision of the Department and, according to plaintiffs, are, therefore, not "State banks" within the meaning of § 36(h).
While plaintiffs' construction of the statute is not entirely persuasive, the court concludes that the legislative history of the McFadden Act and policy considerations weigh heavily in their favor.[4]
In First National Bank v. Walker Bank & Trust Company, 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966), the United States Supreme Court examined the legislative history of the McFadden Act. In 1923, apparently due to a substantial increase in the number of branch banks, the Comptroller recommended congressional action on branch banking. Action was not taken, however, until 1927 with the adoption of the McFadden Act. Walker Bank, 385 U.S. at 258, 87 S.Ct. at 495. The sponsor of the bill, Representative McFadden, stated at the time of enactment:
As a result of the passage of this act, the national bank act has been so amended that national banks are able to meet the needs of modern industry and commerce and competitive equality has been established among all member banks of the Federal reserve system. 68 Cong.Rec. 5815 (1927).
Walker Bank, 385 U.S. at 258, 87 S.Ct. at 495. The 1927 bill allowed national banks to branch in cities where state banks were allowed by state law to do so and limited state bank members of the Federal Reserve system to "inside" branches.[5]Id. In 1931, a bill to allow national banks to branch irrespective of state law was introduced. It met strenuous opposition and was eventually defeated. Id. at 259, 87 S.Ct. at 496. The Banking Act of 1933 abolished the limitation on state banks included in the 1927 Act and, as Senator Glass stated on the Senate floor, "[permitted national banks to branch] only in those States and to the extent that the State laws permitted branch banking." Walker Bank, 385 U.S. at 259, 87 S.Ct. at 496 (quoting 76 Cong.Rec. 2511 (1933)). The Walker Bank Court concluded that "Congress intended to place national and state banks on the basis of `competitive equality' *570 insofar as branch banking was concerned." Walker Bank, 385 U.S. at 261, 87 S.Ct. at 497.
In First National Bank of Plant City v. Dickinson, 396 U.S. 122, 90 S.Ct. 337, 24 L.Ed.2d 312 (1969), the Comptroller had approved a national bank's application to provide armored car services and to establish an off-premises depository. The Florida Banking Commissioner notified the bank that those services violated Florida law which restricted the business of banking to the main banking facility. The United States Supreme Court stated:
Here we are confronted by a systematic attempt to secure for national banks branching privileges which Florida denies to competing state banks. The utility of the armored car service and deposit receptacle are obvious; many States permit state chartered banks to use this eminently sensible mode of operations, but Florida's policy is not open to judicial review any more than is the congressional policy of "competitive equality." Nor is the congressional policy of competitive equality with its deference to state standards open to modification by the Comptroller of the Currency.
Id. at 138, 90 S.Ct. at 345.
The Comptroller's decision before this court reflects a similar attempt to obtain for national banks a competitive advantage.[6] Mississippi legislation allowing state savings associations greater branching privileges than those of state commercial banks reflects state policy considerations which are not subject to modification by the Comptroller or by this court.[7] That is a responsibility which rests with the Mississippi legislature or with Congress.[8] Certainly there are differences in the ability of commercial banks and savings associations to branch in Mississippi; savings associations may branch statewide whereas commercial banks, state and national, are limited geographically.[9] The Comptroller's decision, however, does not abolish these differences; it merely adjusts the situation so that national commercial banks may branch statewide, leaving only state banks subject to the state law limitations. Defendants contend that any inequality between state and national commercial banks which may be created by the Comptroller's decision could be quickly remedied by Mississippi Code Annotated § 81-5-1(10), which allows state banks to operate branches wherever national banks are allowed to do so. Assuming that defendants are correct in their interpretation of Mississippi law,[10] forcing a state to make such a change is clearly not in furtherance of the purpose of the *571 McFadden Act.[11] The McFadden Act and its legislative history, according to the defendants, reflect a continuing intent to increase the powers of national banks. The McFadden Act, however, actually is intended to preserve a dual banking system,[12] an intent which obviously is not furthered by a decision of the Comptroller that would force a state to change state law in order to preserve its state banking system.[13]
The Comptroller is charged with enforcement of the Act, and for that reason, his decision is entitled to "considerable respect."[14]Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980). In Independent Bankers Association v. Marine Midland Bank, 757 F.2d 453, 561 (2nd Cir.1985), the court considered a decision of the Comptroller which was in accord with his past rulings on which national banks and other parties had relied. Such is not the case here where the Comptroller's decision, while similar to past rulings, has never been upheld by a court. See Mutschler v. Peoples National Bank, 607 F.2d 274 (9th Cir.1979); Dakota National Bank & Trust Co. v. First National Bank & Trust Co., 554 F.2d 345 (8th Cir.), cert. denied, 434 U.S. 877, 98 S.Ct. 229, 54 L.Ed.2d 157 (1977); First National Bank & Trust Co. v. Empie, No. 78-296-C (E.D.Okla., Nov. 15 & Dec. 17, 1982); State Chartered Banks in Washington v. Peoples National Bank, 291 F.Supp. 180 (W.D.Wash.1966).[15] Hence the reliance interest found to be significant in Marine Midland is not a factor to be considered here.
This court is, accordingly, of the opinion that the Comptroller's decision is not in accordance with law and cannot be upheld. It is, therefore, ordered that defendant Comptroller is prohibited from issuing a certificate of authority authorizing DGNB to establish and operate a branch banking office in Gulfport, Mississippi and defendant DGNB is prohibited from establishing and operating a branch banking office in Gulfport, Mississippi.
Plaintiffs shall prepare a judgment pursuant to the local rules and submit to defendants for approval as to form.
NOTES
[1] Miss.Code Ann. § 81-1-59 (Supp.1984).
[2] Use of the word "plaintiffs" hereinafter refers to plaintiff Department and plaintiff-intervenors.
[3] 12 U.S.C. § 36(f) provides:

(f) the term "branch" as used in this section shall be held to include any branch bank, branch office, branch agency, additional office, or any branch place of business located in any State or Territory of the United States or in the District of Columbia at which deposits are received, or checks paid, or money lent.
Plaintiffs note that § 36(f) contains no reference to state law whereas § 36(h) does.
[4] Review of legislative history and public policy is helpful in cases of statutory construction. See, e.g., Sutherland Stat.Constrn. §§ 45.05, 45.06 & 45.09 (4th ed.).
[5] The legislative history and the Act itself are devoid of specific reference to savings and loan associations. Reference was made during debates, however, to the fact that national banks in Missouri would have limited branching power because Missouri imposed such restrictions on state commercial banks. 66 Cong.Rec. 1568 and 1764 (1925). At that time Missouri authorized more extensive branching by savings and loan associations. See Laws of Mo., 1925, p. 152.
[6] In Plant City, the Comptroller had determined that the services offered by the bank were not branches within the § 36(f) definition and, therefore, not subject to the state law prohibition. Defendants rely on Plant City contending that it holds that federal law and not state law is to be used to define "branch," a proposition to which all litigants in the case agreed. See id. at 134, n. 7, 90 S.Ct. at 343, n. 7. To determine whether, under federal law, the services offered constituted a branch, the court looked not only to the language of the statute, but also to the statutory purpose of maintaining competitive equality. See id. at 136, 90 S.Ct. at 344.
[7] The branching provisions relevant to commercial banks and savings associations are parts of a legislative scheme devised by the Mississippi legislature to insure that both types of institutions will provide the best service to Mississippi consumers.
[8] DGNB initially approached the Mississippi legislature to advocate changes in the state's branching laws. The legislature apparently decided that the proposed changes were not in the best interest of the state.
[9] It should be noted that Congress likewise has established different branching powers for national banks and federal savings and loan associations. Whereas the McFadden Act limits branching by national banks to the extent allowed state banks, The Federal Home Loan Bank Board may permit branching by federal savings and loans irrespective of state law governing state savings and loans. See Independent Bankers Ass'n v. FHLBB, 557 F.Supp. 23, 26 (D.D.C.1982).
[10] Even if defendants are not correct, it is arguable that, if DGNB were allowed to open its branch office in Gulfport, the Mississippi Legislature would be under pressure to enact legislation that would allow state banks to do the same.
[11] This is particularly true when the state's legislature has recently refused to make such a change.
[12] See Plant City, 385 U.S. at 131, 90 S.Ct. at 342. That defendants are not correct is reflected by the sound defeat of the 1931 bill which would have allowed national banks to branch irrespective of state law. Additionally, the Walker Bank Court began its discussion of the background of the National Bank Act by stating: "There has long been opposition to the exercise of federal power in the banking field." Walker Bank, 385 U.S. at 256, 87 S.Ct. at 495.
[13] Mississippi's state commercial banking system would be jeopardized in that state commercial banks would be prompted to convert their charters to enable them to compete in the commercial banking market.
[14] But see Plant City, 385 U.S. at 138, n. 11, 90 S.Ct. at 345, n. 11 (statements regarding Comptroller's attempts to allow national banks to branch beyond limits of state law).
[15] This court is of the opinion that the substantive analyses utilized in these cases is not controlling for each case fails to address directly the question in issue here. In addition to showing that the Comptroller's position has been rejected by every court that has considered it, the cases are relevant in that, following their dispositions, Congress has not taken any action to change the law through new legislation.