[Civ. No. 46855. Second Dist., Div. Three. May 26, 1976.]

DEBTOR REORGANIZERS, INC., Plaintiff and Appellant, v.
STATE BOARD OF EQUALIZATION, Defendant and Respondent.

## COUNSEL

Gendel, Raskoff, Shapiro & Quittner and B. J. Adelson for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Philip C. Griffin and Herbert A. Levin, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**POTTER, J.**—Plaintiff Debtor Reorganizers, Inc. appeals from a summary judgment in favor of defendant in plaintiff's action to recover use taxes in the sum of $27,905.60 paid by plaintiff's assignor Fat Jones Stables, Inc. (hereinafter referred to as "Stables"), in respect of which a claim for refund was made by Stables and denied by defendant board. The taxes in question were for the period January 1, 1966 through October 12, 1969, during which period Stables was engaged in the business of selling and leasing equipment and livestock which had been purchased from a trustee in bankruptcy in the course of liquidation of a bankrupt estate pursuant to an order of the United States District Court.

Stables collected and remitted sales taxes on all outright sales of such livestock and equipment each quarter as the sales were made. It did not pay sales or use taxes in respect of the rental receipts of livestock and equipment leased by it. Defendant board served a notice of determination requiring payment of "use tax applied to rental receipts derived from petitioner's leases of livestock and equipment purchased from the trustee in bankruptcy . . . ." Payment was made by Stables in accordance with the notice of redetermination and a claim for refund was filed.

Both plaintiff and defendant moved for summary judgment. There was no dispute as to the facts and the trial court concluded therefrom that use tax was payable based upon such rental receipts.

### Contentions

Plaintiff contends that the sale of the livestock and equipment to Stables by the bankruptcy trustee, and the use by Stables of such property were not subject to sales or use tax because the imposition of a tax would be an unauthorized burden on the process of liquidation and that the use tax collected "is only imposed in lieu of the tax" which "the State is prohibited from collecting."

Defendant board contends that the claimed exemption of the sale by the trustee to Stables and of Stables' use is of questionable validity and that in any event the tax upon the rental receipts is not a tax in lieu of such sales or use tax.

*Discussion*

▮ We conclude that the application of the use tax found proper in the trial court does not constitute an unlawful interference with the process of the bankruptcy court, and we therefore affirm.

Plaintiff's claim that both the original liquidation sale from the trustee to Stables and Stables' subsequent use of the property purchased are exempt from taxation is based upon the decisions of the United States Court of Appeals for the Ninth Circuit in *California State Board of Equalization* v. *Goggin* (9th Cir. 1951) 191 F.2d 726 [27 A.L.R.2d 1211] [*Goggin* I] cert. den., 342 U.S. 909 [96 L.Ed. 680, 72 S.Ct. 302], and *California State Board of Equalization* v. *Goggin* (9th Cir. 1957) 245 F.2d 44 [*Goggin* II] cert. den., 353 U.S. 961 [1 L.Ed.2d 910, 77 S.Ct. 863]. In *Goggin* I, the Ninth Circuit held the district court acted properly in affirming a referee's order enjoining the board from enforcing a claim of sales tax liability based upon liquidation sales made by the trustee in bankruptcy. The sales were made by the trustee without adding sales tax to the purchase price and the board made an additional determination of taxes for which demand for payment was made. The court stated the issue as follows: "The question remains whether or not the California sales tax applies to liquidation sales of personal property made by a trustee in bankruptcy pursuant to court order." (191 F.2d at p. 729.)

The California Sales Tax Law was construed by the court as applying only to a seller who is *"conducting a retail business."* (*Id.*) The court said: " '[T]he sale was not made in the course of conducting a business but in the process of putting an end to a business.' " (*Id.*) Such interpretation of the California statute was found to make it consistent with the federal statute "making officers appointed by United States courts liable for state taxes if they 'conduct any business.' [Fn. omitted.]" (191 F.2d at p. 730.) Judge Fee, then a district judge, concurred but upon the basis that the state had no power to thus tax the process of liquidation. Judge Fee said in this respect (*Id.*): "A tax on this transaction, whatever form it takes, is a tax on the process of the Court liquidating assets in accordance with constitutional power. In another aspect, it may be considered as a license fee required of a federal officer to make liquidation. In either event, it is void. A tax may be levied upon specific property in the hands of a trustee in bankruptcy. [Citation.] But no state is empowered to levy taxes upon the process of the courts of the United States or to impede the officers of court in an essential judicial function. [Citation.] The District Court held as a fact that the transaction was in the nature of liquidation and was not

a state tax upon the business of constructing and selling cabinets conducted by the trustee, who was authorized thereto by the United States Court. [Citation.] This finding of fact is binding unless clearly erroneous. [Citation.] Under such conditions, neither enactments of the State of California nor decisions of state courts nor practices of state administrative bodies can burden or impede administration of acts relating to bankruptcies. [Citation.]"

In *Goggin* II, Judge Fee, as a regular member of the court, authored the opinion. The board had again attempted to tax a liquidation sale of bankruptcy assets, seeking to avoid the effect of the first decision by calling it a use tax upon the purchaser which the trustee was required to collect.

This distinction was held irrelevant. Reference was again made to the federal statute "permitting officers of the bankruptcy court to pay taxes to the state for acts done in the conduct of the business" (245 F.2d at p. 45) as excluding taxability of acts done in liquidation, and the court said (*id.*): "In practice, if the sales tax were levied upon the Trustee, he would necessarily have passed the tax on to the purchaser. The same result is attained by taxing the purchaser and requiring the Trustee to collect or collecting the impost from the purchaser. All these devices are proscribed as to liquidating sales in bankruptcy. [Fns. omitted.]"

A contrary conclusion has been reached by the United States Court of Appeals for the Fifth Circuit in a more recent case, *In re Hatfield Construction Company* (5th Cir. 1974) 494 F.2d 1179. In that case, the Commissioner of Revenue of the State of Georgia was held entitled to require payment of sales tax upon liquidation sales made by a trustee in bankruptcy. The court observed that "the liability for sales tax under the Georgia Act is imposed primarily on the purchaser with secondary liability on the seller to collect and remit the tax." (494 F.2d at p. 1180.) The situation was, therefore, indistinguishable from that presented in the *Goggin* II decision. Referring to the federal statute cited in the *Goggin* decisions, the court said (494 F.2d at p. 1181): "We do not read this statute as precluding or limiting the state taxing process in the circumstances obtaining here. Indeed, it has been long settled that property in the hands of a trustee in bankruptcy is not thereby exempt from state and local taxes, absent a clear expression from Congress to the contrary. Swarts v. Hammer, 1904, 194 U.S. 441, 24 S.Ct. 695, 48 L.Ed. 1060. Section 960 is not such a clear expression, at least where the tax on

the liquidating function is imposed on the purchaser in liquidation. This was the view of the Second Circuit in *Leavy, supra,* and it is a view tangentially supported by Missouri v. Gleick, 8 Cir., 1943, 135 F.2d 134, where a liquidation trustee was held liable for Missouri unemployment tax. *See also* In re Mid America Co., S.D.Ill., 1939, 31 F.Supp. 601, 606; In re Loehr, E.D.Wis., 1950, 98 F.Supp. 402; Note, State Taxation of Bankruptcy Liquidation: Federalism Misconceived, 67 Yale L.J. 335 (1957); Wurzel, Taxation During Bankruptcy Liquidation, 55 Harv.L. Rev. 1141, 1166 (1942). *Contra:* 4A Collier on Bankruptcy, ¶ 70.97 [4]; Paskay, Handbook for Trustees and Receivers in Bankruptcy, § 14.005; Note, Bankruptcy Sale as a Judicial Sale Free from Taxation, 1 Journal of Public Law 504 (1952); Maclachlan, Bankruptcy 349 (1956). Collier recognizes an exception based on the *Leavy* case where the trustee is merely a collecting agent of the sales tax. 4A Collier, p. 1145, n. 41.

"It may be true that although, in its legal incidence, the sales tax is on the purchaser, it has an indirect economic effect upon the bankrupt estate in that the purchaser, assumedly, would have been willing to pay more had he not been obliged to satisfy the tax. *Such an indirect economic detriment is not an impermissible burden even were the estate a government instrumentality. Cf.* Graves v. New York ex rel. O'Keefe, 1939, 306 U.S. 466, 59 S.Ct. 595, 83 L.Ed. 927. Here, however, those ultimately affected are but creditors of the bankrupt. The only burden on the trustee is the collection and remission of the tax, which we could not consider consequential." (Italics added.)

■ The decisions of the lower federal courts, even on federal questions, are not binding upon this court. (*People* v. *Bradley,* 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129]; *People* v. *Estrada,* 234 Cal.App.2d 136, 145 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307].) "However, they are persuasive and entitled to great weight." (1 Cal.3d at p. 86.) As between the decisions of the Ninth Circuit and that of the Fifth Circuit, no primacy inheres in the former, so the persuasiveness of the conflicting views must depend upon the validity of the arguments made therein. The more recent decision of the Fifth Circuit in *Hatfield* clearly states better reasons and is persuasive authority that even a direct sales tax upon the trustee's sale or a use tax upon Stables' use of the liquidated livestock and equipment would not constitute an unlawful tax on the process of the bankruptcy court. We need not, however, rest our decision upon such holding. ■ As applied in the case at bench, the tax resulted in an even more "indirect economic detriment" than the court found permissi-

ble in *Hatfield* and imposed no burden whatever upon the trustee in "collection and remission of the tax."

In *Hatfield,* the court found that the indirect economic detriment to the bankrupt estate, arising from the assumption that a purchaser would be willing to pay more at a liquidation sale if not obliged to satisfy the tax, did not constitute an "impermissible burden." The detriment here involved is even more remote—it arises from the assumed willingness of a purchaser to pay more by virtue of his ability to relieve his lessee of the obligation to satisfy the tax.

The burden on the trustee of the collection and remission of the tax which the *Hatfield* court did "not consider consequential" is totally absent under the facts of this case. The party who was obliged to collect and remit the taxes was Stables, not the trustee who had no responsibility of any kind in connection therewith. Any claim that the tax constitutes "a license fee required of a federal officer to make liquidation," or "is a tax on the process of the court liquidating assets" (as argued in Judge Fee's concurring opinion in *Goggin* I) is, therefore, wholly untenable. It is thus clear that under the facts here presented, the collection of the tax presents no real burden upon the liquidation process.

Moreover, plaintiff's argument that taxation of the rental receipts is the equivalent of sales or use taxes upon the trustee's sale to Stables because it is "in lieu thereof" is not persuasive.

Plaintiff concedes the taxability of, and has paid sales tax upon, its outright sales of livestock and equipment purchased from the trustee. Revenue and Taxation Code section 6006, subdivision (g), defines "sale" to include:

"Any lease of tangible personal property in any manner or by any means whatsoever, for a consideration, except a lease of:

". . . . . . . . . . . . . . . . .

"(5) Tangible personal property leased in substantially the same form as acquired by the lessor or leased in substantially the same form as acquired by a transferor, as to which the lessor or transferor has paid sales tax reimbursement pursuant to Section 6052 or has paid use tax measured by the purchase price of the property. . . ."

The tax payable upon a lease which is deemed a sale is not imposed in lieu of any other tax. It is payable because a lease, like an outright sale, creates a new use that is equated with that incident to a new ownership. Revenue and Taxation Code section 6009 provides in this respect: " 'Use' includes the exercise of any right or power over tangible personal property incident to the ownership of that property, and also includes the possession of, or the exercise of any right or power over, tangible personal property by a lessee under a lease, except that it does not include the sale of that property in the regular course of business."

It is for that reason that the rentals payable are included within the measure of use tax and are exempt from the measure of sales tax. This was pointed out in *Ladd* v. *State Bd. of Equalization,* 31 Cal.App.3d 35, 39 [106 Cal.Rptr. 885], where the court said: "While a lease of tangible personal property has, since August 1, 1965, been included within the definition of a sale (Rev. & Tax. Code §§ 6006, subd. (g)(5), and 6010, subd. (e)(5)), the order of taxation is the inverse of that present in ordinary sales. Rentals payable under a lease of tangible personal property are exempted from the measure of sales tax (Rev. & Tax. Code, § 6390), but are included within the measure of use tax. (Rev. & Tax. Code, § 6401.) Rental receipts from a lease of tangible personal property, which would otherwise be so includable, are excluded if the property is leased in substantially the same form as acquired by the lessor and if the lessor has himself paid sales tax reimbursement or use tax measured by the purchase price to him of the property. (Rev. & Tax. Code, §§ 6006, subd. (g)(5), and 6010, subd. (e)(5).)"

■ The effect of the exemption provided in Revenue and Taxation Code section 6006, subdivision (g)(5), is to afford the lessor of personal property (leased in substantially the same form as acquired by him) an option whereby the incidence of use tax upon the lease rentals may be diminished in effect by prepayment of the lesser sales or use tax which would have been applicable on account of the lessor's original purchase and storage if the property had not been acquired and stored for resale. (Cf. Rev. & Tax. Code, §§ 6007, 6008.)

In *Action Trailer Sales, Inc.* v. *State Bd. of Equal.,* 54 Cal.App.3d 125 [126 Cal.Rptr. 339], this court validated Regulation 1660 (c)(2) of defendant board requiring the lessor to make a timely exercise of the option. In so doing, we stated (54 Cal.App.3d at pp. 131-132):

"Revenue and Taxation Code section 6006, subdivision (g)(5), allows a lessor of tangible personal property leased in substantially the same form as acquired to pay sales tax reimbursement pursuant to section 6052 or use tax measured by the purchase price of the property if the lessor desires to do so rather than to collect sales tax from his lessee. . . .

". . . . . . . . . . . . . . . . . . . .

"The option of paying sales tax reimbursement pursuant to section 6052 by definition must be exercised with respect to the original acquisition of the property by the lessor by paying sales tax to the transferor of the property. The next option is that of paying use tax measured by the purchase price of the property. . . .

". . . . . . . . . . . . . . . . . . . .

"The two options embodied in section 6006, subdivision (g)(5), which take a lease out of the category of a sale are couched in the past tense. If the lessor has failed to either pay sales tax reimbursement to the transferor at the time of the transfer of the property or has not timely reported and paid use tax based on the purchase price of the property at the time the property is first placed in rental service, the lease of the property is considered a sale and the lessor is either required to collect use tax from the lessee of the property or pay the amount he should have so collected."

It is apparent from the foregoing that the taxable event is the creation of the lessee's use, and that the primary tax is the use tax upon such lessee's use, measured by the rental receipts. So far as there is any tax payable in lieu of another tax, the sales or use tax measured by the purchase price of the lessor's original purchase is the substitute tax which a lessor may at his option make applicable if timely action is taken by him. In the absence of such timely exercise of the option, the primary tax remains payable. It does not thereby become a tax payable in lieu of the sales and use taxes.

Plaintiff's argument that it should not be required to pay a sales or use tax not legally enforceable against it in order to achieve such benefit overlooks the fact that no lessor who has purchased for resale by leasing is obligated to pay either sales or use tax on account of the original purchase or his storage prior to leasing. Normal operation of the options afforded by section 6006, subdivision (g)(5), is that the lessor pays the

lesser tax which was not obligatory in order to avoid the use tax upon the lessee's use based upon the full lease rental.

We, therefore, conclude that even if Stables' original purchase of the livestock and equipment from the trustee in bankruptcy and its use thereof prior to leasing was exempt under the rule stated in the *Goggin* cases, that circumstance would not require exemption from the use tax upon the lessee's use.

The judgment is affirmed.

Ford, P. J., and Allport, J., concurred.