[Civ. No. 25304. Third Dist. Apr. 25, 1986.]

FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION,
Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
AMERICAN SAVINGS AND LOAN ASSOCIATION,
Real Party in Interest.

**COUNSEL**

Tuttle & Taylor, A. James Roberts III, C. Stephen Howard, Jeffrey M. Hamerling, David B. Babbe, Norman H. Raiden, Harry Quillian, Ralph W. Christy and William K. Black for Petitioner.

No appearance for Respondent.

Richard H. Cooper, William H. Jennings, Grant K. Riley and Freshman, Marantz, Orlanski, Comsky & Deutsch for Real Party in Interest.

**OPINION**

**EVANS, Acting P. J.**—Federal Savings and Loan Insurance Corporation (FSLIC) as receiver for San Marino Savings and Loan Association (San Marino) seeks a peremptory writ of prohibition restraining respondent superior court from proceeding further on a complaint filed against San Marino and directing respondent to dismiss the action for lack of subject matter jurisdiction. We shall grant the request.

The FSLIC is an agency and instrumentality of the United States, operated and directed by the Federal Home Loan Bank Board (Bank Board). (12 U.S.C. §§ 1725, 1730.)[1] It has been charged by Congress with responsibility for insuring accounts of eligible state-chartered savings and loan associations, various savings banks, and all federal savings and loan associations. (§§ 1725(a), 1726(a).) In addition, the FSLIC may be appointed by the Bank Board to serve as conservator or receiver of any troubled insured institution. (§§ 1464(d)(6)(A), 1729(c).)

San Marino was a state-chartered savings and loan association whose accounts were insured by the FSLIC pursuant to 12 United States Code section 1726. In February 1984, the Bank Board adopted a resolution placing San Marino in conservatorship and appointing the FSLIC as sole conservator for San Marino. Pursuant to that resolution, the FSLIC took possession of the assets and property of San Marino and, by operation of federal law, assumed "all the powers of the members, the directors, and the officers of the association." (§ 1464(d)(6)(D).)

In September 1984, while San Marino was in conservatorship, American Savings and Loan Association (American) filed a complaint against San Marino seeking damages for breach of contract. American's action arose out of the purchase of loans originated by San Marino prior to its conservatorship. Pursuant to American's request, respondent court issued a $14.2 million writ of attachment to secure American's claim against San Marino.[2] On December 6, the Bank Board by two separate resolutions placed San Marino in receivership, appointed the FSLIC as receiver for San Marino, and directed the FSLIC to liquidate the assets of San Marino in an orderly manner.

Thereafter, petitioner filed a motion for judgment on the pleadings, seeking dismissal of the action, asserting respondent lacked subject matter jurisdiction to adjudicate the action by virtue of the provisions of section 1464(d)(6)(C), and a motion to set aside an attachment order obtained by American ex parte and without notice on the basis that such attachment was prohibited by sections 1730(k)(1) and 1464(d)(6)(C) and on the doctrine of *in custodia legis*. Respondent denied both motions on May 28, 1985. Two days later, petitioner filed a fifth supplemental memorandum of points and authorities in support of its motion for judgment on the pleadings or, in the alternative, a motion for reconsideration. Prior to respondent's ruling on

---

[1]Unless otherwise indicated, all further section references are to 12 United States Code.

[2]Thereafter, San Marino sought to move the action to the United States District Court in Sacramento, claiming that the complaint raised a substantial federal question. On December 18, the federal district court rejected San Marino's contention and remanded the action to respondent.

the alternative motion for reconsideration, petitioner sought a writ of prohibition from this court. We issued an alternative writ of prohibition commanding respondent to refrain from further proceedings in the specified action.

## DISCUSSION

Petitioner argues respondent lacks subject matter jurisdiction over the action against San Marino. Pursuant to its statutory authority under the National Housing Act (§ 1701 et seq.), the Bank Board has established an administrative process for resolving claims against failed savings and loan associations placed in receivership under the auspices of the FSLIC, including claims against such associations by creditors entitled to security or priority in such receiverships. (See 12 C.F.R. §§ 549.4, 549.5, 549.5-1, 569a.7, 569a.8, and 569a.9 (1985).) To ensure that all claims against a failed savings and loan association placed in receivership are expeditiously resolved in a single forum, Congress has provided in section 1464(d)(6)(C) that: "[N]o court may . . . except at the instance of the [Bank] Board, restrain or affect the exercise of powers or functions of a conservator or receiver." Section 1729(d) further provides: "In connection with the liquidation of insured institutions, the [FSLIC] shall have power . . . to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the [Bank Board], . . ." (See § 1729(c)(3).)

American argues the adjudication of claims against a debtor, as opposed to the allocation of assets to satisfy those claims, is not a receivership function. That argument was expressly rejected in *North Mississippi Sav. & Loan Ass'n* v. *Hudspeth* (5th Cir. 1985) 756 F.2d 1096.[3] In *Hudspeth,* the court considered application of sections 1464(d)(6)(C) and 1729(d) to a counterclaim filed against a savings and loan association prior to the appointment of the FSLIC as receiver. In affirming the district court's dismissal of Hudspeth's claim, that court stated, "resolution of even the facial merits of claims outside of the statutory reorganization process would delay the receivership function of distribution of assets: . . . Given the overriding Congressional purpose of expediting and facilitating the FSLIC's task as receiver, such a delay is a 'restraint' within the scope of the statute [§ 1464(d)(6)(C)]." (*Id.,* at p. 1102.) The court emphasized that the legislative history of section 1464(d)(6)(C) confirms that "Congress wanted the FSLIC to be able to act quickly and decisively in reorganizing, operating, or dissolving a failed institution, and intended that the FSLIC's ability to

---

[3]Prior to its modification on May 23, 1985, *Hudspeth* had agreed with American's contention.

accomplish these goals not be interfered with by other judicial or regulatory authorities.''[4] (*Id.*, at p. 1101.)

American contends the argument that judicial prosecution of claims will delay the FSLIC's liquidation and thus restrain its function as a receiver is fatuous. It argues the FSLIC is precluded from a claim of injury by delay in this case since the FSLIC itself has stayed the proceedings in American's court action. We disagree. Whatever contribution to the delay in the liquidation process by the FSLIC stemmed from its participation in American's litigation. Delays in the judicial proceeding could have been avoided if the FSLIC had been permitted at the outset to settle American's claim pursuant to section 1729(d). Furthermore, there is nothing in the statutes governing the receiver's powers and functions to indicate their application on a case by case basis. (§§ 1464(d)(6)(C), 1729(d).) Instead, such statutes were obviously meant to enhance the overall ability of the FSLIC to speedily settle creditors claims.

American's contention that its action does not interfere with the liquidation process is specious. It argues that the FSLIC is not prevented from immediately liquidating the assets subject to American's lien and holding the proceeds from the sale of such property until the resolution of its claim. American apparently ignores the fact the FSLIC is also responsible for the distribution of the liquidated assets. Since the FSLIC cannot determine how to divide the assets until the termination of American's action, that action constitutes a "restraint" of the receiver's function.

American also raises the Federal District Court case of *Gibraltar Bldg. & Loan* v. *State Sav. & Loan Ass'n* (N.D.Cal. 1985) 607 F.Supp. 722, decided May 2, 1985, as support for the view that a prereceivership claim may be judicially established. The *Gibraltar* decision, however, was predicated on the earlier *Hudspeth* decision, which had initially agreed with American's contention that the receiver's power of liquidation and distribution did not include the adjudication of the underlying debt. Since *Hudspeth* was modified, American's reliance on *Gibraltar* is wasted.

American next argues that regardless of the correctness of *Hudspeth*, its suit against San Marino is distinguishable because it had acquired a $14.2 million writ of attachment against San Marino prior to the establishment of

---

[4]American argues the reasoning of *Hudspeth* is inconsistent with the right to judicial review following the FSLIC's determination of a claim. We think not. A review of the administrative resolution of the claim is necessary to ensure the proper exercise of administrative power. Congress apparently concluded that the expedition of claims in a liquidation proceeding did not warrant an exemption from the safeguards of the Administrative Procedure Act.

the receivership and that such writ vested respondent with exclusive jurisdiction over the attached property. American attempts to draw an analogy to bankruptcy cases prior to the enactment of the 1978 Bankruptcy Code (11 U.S.C. § 101 et seq.) for the proposition that respondent cannot be ousted of jurisdiction over property that is the subject of a writ of attachment. We conclude the legislative purpose behind the enactment of statutes governing liquidations by the FSLIC renders those cases inapposite.[5]

It is clear that Congress intended to give the FSLIC, acting as receiver of an insolvent association, *exclusive* authority to resolve creditor's claims in order to facilitate speedy liquidation. The FSLIC is responsible for each insured account of a failed association for an amount up to $100,000. (§ 1728.) Because "[t]imely . . . payments [to account holders] are vital, not only as a matter of equity . . . but also to preserve the confidence of the public at large in the safety and stability of savings and loan associations," the FSLIC is authorized to make insurance payments to all savings account holders when appointed as receiver for liquidation. (Sen. Rep. No. 1263, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S. Code Cong. & Admin. News, at p. 2540; § 1729(b)(2).) Such payments generally entitle the FSLIC to a claim of at least 95 percent of the assets of the failed association. (1968 U.S. Code Cong. & Admin. News, at pp. 2531, 2536.) Congress has recognized that "The reserves of the FSLIC are not unlimited and cannot stand an indefinite repetition of unrecovered receiverships. Moreover, the [FSLIC] cannot afford to have huge amounts of its capital tied up indefinitely at zero interest without increasing insurance premiums to the entire industry." (*Id.,* at p. 2537; fn. omitted.) Since the FSLIC would not be able to divide the assets of the failed association and recoup its insured payments until the resolution of all disputed claims (see *Hudspeth, supra,* 756 F.2d at p. 1102), Congress conferred exclusive authority to the FSLIC in liquidation proceedings in order to aid in the maintenance of FSLIC insurance reserves. (See 1968 U.S. Code Cong. & Admin. News, at p. 2537.)

*Hudspeth* concluded that federal statutes (§§ 1464(d)(6)(C) and 1729(d)) have clearly occupied the field with respect to the liquidation of federally insured associations. We agree with *Hudspeth's* reasoning and conclusion.

---

[5]American raises the argument that where two courts have jurisdiction to adjudicate claims to certain property, the court first acquiring possession over the property has exclusive jurisdiction. Petitioner's response is that the authorities cited by American pertained to courts with concurrent or limited jurisdiction (as in bankruptcy cases prior to 1978) and thus were inapposite; here, the state court had *no* subject matter jurisdiction. Petitioner argued that under the new Bankruptcy Code, as amended in 1984, the court presiding over bankruptcy *now* has *exclusive* jurisdiction over all property of the debtor without regard to the fact that such property might be involved in other legal proceedings. (See 28 U.S.C. § 1334(d); 11 U.S.C. § 541(a).)

We therefore conclude that state courts have been stripped of any jurisdiction to hear claims against assets of the failed association; any claim against the association must therefore be "switched to the administrative track." (*Hudspeth, supra,* 756 F.2d at p. 1103.)

It is undisputed that the dismissal of American's action will result in the nullification of its attachment. American argues that absent a provision expressly authorizing the destruction of valid liens in receivership liquidations, the FSLIC should not be vested with such power. We disagree. The failure to dismiss the court action by virtue of the writ of attachment would surely be a "restraint" of the receivership function. Such restraint has been expressly prohibited by Congress. (§ 1464(d)(6)(C).) To permit respondent to adjudicate the claim because American had attained a writ of attachment prior to receivership would frustrate congressional intent to aid the FSLIC in maintaining its insurance reserves. As pointed out by American, it was the very threat of potential receivership which impelled it to seek attachment relief from the court. If American was permitted to secure jurisdiction in state court by virtue of a writ, it is conceivable that a flood of applications for writs of attachment would be instigated by creditors of floundering institutions, i.e., those placed in conservatorship. The impact of such action would virtually remove the FSLIC's authority, upon appointment as receiver, to settle claims in a liquidation proceeding and result in immeasurable delays and damage.

■ In a related argument, American contends the destruction of the writ of attachment constitutes an unlawful taking without just compensation. The argument, premised on the assertion that the nullification of American's lien would reduce it to the status of an unsecured creditor, is meritless.

We initially note that American has not established a secured claim. The writ of attachment is merely a device by which American seeks to gain preference over *other unsecured* creditors. (See *Title Ins. etc. Co.* v. *California Dev. Co.* (1915) 171 Cal. 173, 216 [152 P. 542].) Although we acknowledge an attachment entitling a creditor to resort to specific property for the satisfaction of a claim is a compensable property right (*Armstrong* v. *United States* (1960) 364 U.S. 40 [4 L.Ed.2d 1554, 80 S.Ct. 1563]; *Louisville Joint Stock Land Bank* v. *Radford* (1935) 295 U.S. 555 [79 L.Ed. 15, 55 S.Ct. 854, 97 A.L.R. 1106]), the question of whether or not the nullification of American's attachment constitutes an unconstitutional taking is not ripe for review.

Here, the dismissal of American's suit will not result in the loss of its opportunity to gain a priority claim; the resolution of that claim will simply be transferred to an administrative forum. The FSLIC, as receiver, is em-

powered to consider all claims for security. (See 12 C.F.R. §§ 549.4, 549.5, 549.5-1, 569a.8 (1985).) As American has pointed out, the FSLIC has been specifically directed in this case to recognize a claim for security to the extent that a creditor's claim constitutes a valid lien on the property of San Marino. Even though American's attachment will be discharged as a result of the dismissal of its action, American will still have the opportunity to present a claim for security (in effect for priority) in the liquidation of San Marino to the extent of the proceeds received from the sale of the previously attached property. If American's claim is not fully satisfied, it may then seek just compensation for the difference between the amount of the assets awarded and the amount of assets previously under attachment. Since the merits of American's claim has not been determined, the allegation of an unconstitutional taking of property is premature. (Cf. *Dames & Moore* v. *Regan* (1981) 453 U.S. 654, 688-690 [69 L.Ed.2d 918, 945-946, 101 S.Ct. 2972].)

■ Finally, American argues respondent's jurisdiction to adjudicate its claim cannot be set aside for failure to exhaust administrative remedies. It contends exceptions to the general rule of exhaustion of administrative remedies exists in the present case since: (1) dismissal of its action would result in irreparable injury; (2) the pursuit for administrative relief would be futile; (3) petitioner has waived the argument of exhaustion of administrative remedies by failure to raise that issue at the earliest possible occasion; and (4) administrative remedies did not exist at the time of the filing of the action.

It is well settled in this state that "a litigant must invoke and exhaust an administrative remedy provided by statute before he may resort to the courts. Jurisdiction to entertain an action for judicial relief is conditioned upon a completion of the administrative procedure. [Citation.]" (*United States* v. *Superior Court* (1941) 19 Cal.2d 189, 194 [120 P.2d 26].) Although exceptions to the rule of exhaustion have been established, they do "not apply to an exhaustion requirement that is a 'statutorily specified jurisdictional prerequisite.' [Citation.] Statutory exhaustion requirements 'may call into play constitutional concerns of separation of powers, and failure to adhere to them necessarily defeats jurisdiction.' [Citation.] If Congress has expressly made federal court jurisdiction to review a claim subject to an exhaustion requirement, then an unexhausted claim must be dismissed." (*I.A.M. Nat. Pen. Fund* v. *Schulze Tool & Die* (N.D.Cal. 1983) 564 F.Supp. 1285, 1291.)

Section 1464(d)(6)(C) sets forth a jurisdictional prerequisite. The right to judicial review vests only *after* completion of the administrative action. (See *Hudspeth, supra,* 756 F.2d at p. 1103.) We conclude the respondent court lacks subject matter jurisdiction to determine American's claim.

Let a peremptory writ issue, directing the respondent court to dismiss the writ of attachment previously issued upon the request of American Savings and Loan, and to dismiss the underlying action brought by American against San Marino (San Joaquin County Superior Court No. 179526).

Sims, J., and Backus, J.,* concurred.

The petition of real party in interest for review by the Supreme Court was denied July 30, 1986.

---

*Assigned by the Chairperson of the Judicial Council.