[No. D007787. Fourth Dist., Div. One. Mar. 24, 1989.]

ABC PLUMBING & HEATING COMPANY, INC., Plaintiff and Appellant, v.
VERNON SAVINGS & LOAN ASSOCIATION, Defendant and Respondent.

## COUNSEL

Hillyer & Irwin, Mark D. Martin and Wescott Griswold for Plaintiff and Appellant.

Schall, Boudreau & Gore, James A. Macy, Theresa Castagneto Jordan Luke, Jack Smith, Dorothy Nichols and Charles McDonald for Defendant and Respondent.

## OPINION

NARES, J.—ABC Plumbing & Heating Company, Inc. (ABC) appeals a judgment in favor of Vernon Savings & Loan Association (Vernon) after the court dismissed ABC's complaint for breach of contract, to foreclose a mechanic's lien, and to enforce a stop notice against Vernon for lack of subject matter jurisdiction. The primary issue in this case is whether a subcontractor which has filed and served a lawsuit in state court in compliance with state statutes enacted for its protection can be denied access to a court for adjudication of its claims because a construction lender is declared insolvent after the state court has assumed jurisdiction over the parties. We hold the subcontractor cannot be denied access to a court of competent jurisdiction, and we reverse the judgment dismissing the complaint.[1]

---

[1] After this court had prepared its opinion in this case, the United States Supreme Court decided *Coit Independence Joint Venture* v. *Federal Savings and Loan Insurance Corporation* (1989) 489 U.S. 561 [103 L.Ed.2d 602, 109 S.Ct. 1361].

### FACTUAL AND PROCEDURAL BACKGROUND

In March 1984 ABC entered into a subcontract with Tucker Construction Company, Inc. (Tucker) to furnish and install plumbing at the Laurel Terrace project. Alex Tucker Development Corporation (Alex Tucker) was the reputed owner of the real property. Vernon and Construction Financial Inc. provided financing for the project as construction lenders.

Tucker breached the subcontract by failing to pay ABC $76,470.94. ABC then had a stop notice served on Vernon as the lender, requiring Vernon to withhold $102,132.15 to pay ABC's claims. ABC also recorded a mechanic's lien on the property.

In November 1986 ABC filed a complaint against Vernon and others for breach of contract and to foreclose its lien. Vernon answered, alleged affirmative defenses and denied ABC's claims. In March 1987 the Federal Home Loan Bank Board (FHLBB) appointed the Federal Savings & Loan Insurance Corporation (FSLIC) as receiver for "Old Vernon" and approved a purchase agreement and reorganization by Vernon, FSA. However, Vernon, FSA was later declared insolvent by the FHLBB, and the FSLIC was again appointed receiver and authorized to liquidate Vernon, FSA.

As receiver for Vernon the FSLIC moved for judgment on the pleadings and dismissal of ABC's complaint on the grounds that the court lacked subject matter jurisdiction and ABC failed to exhaust its administrative remedies. After hearing, the court granted the FSLIC's motion for judgment on the pleadings, ruling the case of *Federal Savings & Loan Ins. Corp.* v. *Superior Court* (1986) 180 Cal.App.3d 336 [225 Cal.Rptr. 422][2] was dispositive of the issues raised by the motion, and under *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937] the court was bound to follow *FSLIC* in rendering its decision.[3]

On appeal, ABC contends 1) the FSLIC has no power to adjudicate ABC's claims; 2) adjudication by the FSLIC would violate ABC's due process rights; 3) the FSLIC's assertion of power to adjudicate claims is unconstitutional; and 4) ABC is not required to exhaust its administrative remedies. In making these arguments ABC urges us to follow the reasoning of *Morrison-Knudson Co., Inc.* v. *CHG Intern., Inc.* (9th Cir. 1987) 811

---

[2] For convenience, all future references to this case will be *FSLIC*.

[3] We assume the trial court intended to grant the motion for judgment on the pleadings without leave to amend and to dismiss the complaint thereafter. We treat the appeal as one from a judgment of dismissal. (*Bellah* v. *Greenson* (1978) 81 Cal.App.3d 614 [146 Cal.Rptr. 535, 17 A.L.R.4th 1118].)

F.2d 1209 and reject the reasoning of *North Mississippi Savings & Loan Ass'n* v. *Hudspeth* (5th Cir. 1985) 756 F.2d 1096.[4]

### RELEVANT DECISIONAL AUTHORITY

### A

In *North Mississippi Savings & Loan Association* v. *Hudspeth, supra,* 756 F.2d 1096, the Fifth Circuit held that the FSLIC has exclusive jurisdiction to adjudicate certain claims against the assets of an insolvent savings and loan association placed in FSLIC receivership by the FHLBB. The court further held judicial jurisdiction is limited to reviewing the agency's determination of such claims under the Administrative Procedure Act (APA).

*Hudspeth* involved a dispute between Joseph Hudspeth, the president of Old North, a state-chartered institution, and the FSLIC. When Old North attempted to obtain FSLIC insurance from the FHLBB, the FHLBB refused to issue it unless Hudspeth was replaced as president. Hudspeth resigned as president but continued to receive monthly compensation designated by Old North as deferred compensation. In 1982 Old North filed an action in state court to declare its agreement with Hudspeth nonexistent or terminable. Hudspeth counterclaimed for specific performance and damages.

In 1983 Old North was declared insolvent by the FHLBB, seized, reorganized and reopened as New North, a federally-chartered institution. The FSLIC, as receiver for Old North, terminated the agreement with Hudspeth and stopped paying him. Hudspeth amended his counterclaim to add New North as a party. The FSLIC and New North successfully removed the state court action to federal court pursuant to 12 United States Code[5] section 1730(k)(1) and moved to dismiss Hudspeth's counterclaim.

The district court held " 'original jurisdiction over the conduct of FSLIC . . . lies with FHLBB,' rather than any court." (*North Mississippi Savings & Loan Association* v. *Hudspeth, supra,* 756 F.2d at p. 1101, fn. omitted.) In dismissing the counterclaim for lack of subject matter jurisdiction, the district court stated Hudspeth's sole remedy was a petition to the FHLBB with judicial review available under the APA. (*Ibid.*)

---

[4] *Federal Savings & Loan Ins. Corp.* v. *Superior Court* (1986) 180 Cal.App.3d 336 [225 Cal.Rptr. 422], upon which the court relied in making its ruling, was based on *Hudspeth*. *Morrison-Knudsen* had not yet been decided.

[5] All statutory references are to 12 United States Code unless otherwise specified.

On appeal from that decision, the Fifth Circuit agreed with the district court, reasoning that resolution of claims outside the statutory process would delay the receivership function of distribution of assets. The court concluded that "[g]iven the overriding Congressional purpose of expediting and facilitating the FSLIC's task as receiver, such a delay is a 'restraint' within the scope of the statute." (*North Mississippi Savings & Loan Association* v. *Hudspeth, supra,* 756 F.2d at p. 1102.)

## B

Relying on *Hudspeth,* the Third District in *FSLIC* held a complaint by American Savings & Loan Association for breach of contract against San Marino Savings & Loan Association, then in FSLIC receivership, had to be dismissed by the state court for lack of subject matter jurisdiction. The court issued a writ of prohibition directing the trial court to grant the FSLIC's motion to dismiss.

The types of state claims for mechanics' liens and stop notices presented here were not before the court in *FSLIC.*

## C

In *Morrison-Knudsen Co., Inc.* v. *CHG International, Inc., supra,* 811 F.2d 1209, the Ninth Circuit rejected the reasoning of the Fifth Circuit and held the FSLIC has no exclusive power to adjudicate creditors' claims. The court traced the creation, purpose and authority of the FSLIC from 1934 to the date of the decision and observed that the FSLIC had never asserted the right to adjudicate claims until the recent monumental losses of failed savings and loan associations beginning in the 1980's.[6] After examining the statutory provisions relied upon by the FSLIC, the court concluded: " . . . FSLIC's assertion of adjudicatory power in its receivership capacity is unsupported by the statutory language and inconsistent with congressional intent. The two-tiered framework Congress has established for FSLIC (as for the FDIC) is clear and coherent. As overseer of ongoing associations, the agency stands above the insured institutions and has important but well-defined adjudicatory powers to ensure compliance with federal law. As receiver for failed associations, however, FSLIC stands in the shoes of

---

[6] Of the 3,024 savings and loan associations in the nation as of mid-1988, 223 were closed or merged later in 1988; 345 have been declared insolvent and slated for closure or sale, and 200 more are marginally solvent and likely to fail. More than 400 are likely to fail to meet new capital reserve standards leaving 1,856 surviving savings and loans. The current estimated cost of these insolvent savings and loan associations is $94 billion. (Rep. of Richard G. Darman, White House Budget Director, to the Sen. Banking Com. on Mar. 2, 1989.)

the insured institution. It takes over assets and liabilities, and it assumes full operational control in its own name. It is empowered and indeed obliged to pay all valid depositors' and creditors' claims up to certain limits in orderly fashion and without immediate judicial supervision. It may settle or release these claims with the consent of claimant parties as it sees fit in order to accomplish this task more efficiently. *But when a claim is disputed and agreement cannot be reached, FSLIC is obliged to attend court just as the institutions it represents would have had to do.*" (*Id.* at p. 1222.) (Italics and underscoring added.)

## D

Since *Morrison-Knudsen* was decided, only one state court has addressed the issue before us in the context of state claims. In *Fed. Sav. & Loan* v. *Glen Ridge I Condominiums, Ltd.* (Tex. 1988) 750 S.W.2d 757, several real estate investors sued a savings and loan that was subsequently placed under FSLIC receivership. The investors' causes of action included cancellation of loan agreements, promissory notes and deeds of trust, violation of state securities and usury laws, breach of contract and fraud. Rejecting *Hudspeth* and adopting the reasoning of *Morrison-Knudsen,* the Texas Supreme Court held the language of the statutes defining the authority of the FHLBB and the FSLIC did not include the power to adjudicate claims. The facts of *Glen Ridge* are similar to those here in that the causes of action were state-based. We agree with the court in *Glen Ridge* that "the Ninth Circuit's analysis represents the better-reasoned interpretation of the statutory language and legislative history pertaining to FSLIC's powers as a receiver." (*Id.* at p. 759.)[7]

This court is not bound by either *Hudspeth* or *Morrison-Knudsen* even with respect to questions of federal law. (*Debtor Reorganizers, Inc.* v. *State Bd. of Equalization* (1976) 58 Cal.App.3d 691, 696 [130 Cal.Rptr. 64].) We are also not constrained by *Auto Equity* to follow *FSLIC.* (*McCallum* v.

---

[7] The decision by the Texas Court of Appeals in *Glen Ridge I Condo.* v. *Fed. Sav. & Loan* (Tex. 1987) 734 S.W.2d 374 is well-reasoned on the constitutionality of the adjudicatory powers sought by the FSLIC. We share the Texas Appellate Court's concerns of the FSLIC assuming the power to adjudicate a dispute in which it is not only a party but the party with the single largest claim against the assets of the failed institution. As receiver, the FSLIC succeeds to the rights, titles, powers and privileges of the insolvent institutions as well as its officers and directors. (12 U.S.C. § 1729(b); 12 C.F.R. § 569a.4.) For all practical purposes the FSLIC steps into the shoes of the defendant lending institution. Yet, it argues it can fairly adjudicate creditors' claims while conceding creditors are denied the right to conduct meaningful discovery, and the standard of the judicial review which may subsequently be obtained by a creditor dissatisfied with the FHLBB's determination of its claim would be limited to arbitrary or capricious, or, at best, substantial evidence. We fail to see how this procedure works to increase public confidence in the FSLIC or the FHLBB.

*McCallum* (1987) 190 Cal.App.3d 308, 315 [235 Cal.Rptr. 396].) ▮ We have independently reviewed the statutes relied upon by the FSLIC, and we conclude it has no exclusive adjudicatory powers over creditors' claims.[8] ▮ Further, we have determined based upon the supplemental briefing by the parties that ABC need not exhaust administrative remedies before it proceeds with its state action.

DISCUSSION

I

Preliminarily, we note the FSLIC has chosen not to remove this case to the federal court pursuant to section 1730(k)(1).[9] We assume the FSLIC made this decision because the federal district court would, in fact, apply *Morrison-Knudsen* to the argument made by the FSLIC and refuse to entertain the FSLIC's motion for judgment on the pleadings. However, the FSLIC urges us to do here what cannot be done in the federal district court, that is, deny ABC as creditor the right to a judicial adjudication of its claims while other creditors who are fortuitously in the federal district courts throughout the Ninth Circuit proceed to judicial adjudication.[10] FSLIC asks us to adhere to the holding of *FSLIC* which was decided before any such inconsistent circumstance could have been foreseen by the Third

---

[8] The Solicitor General's brief filed on behalf of the FSLIC before the United States Supreme Court in the case of *Coit Independence Joint Venture* v. *Federal Savings and Loan Insurance Corporation, supra,* 489 U.S. 561 [103 L.Ed.2d 602], stated: "The Bank Board, litigating this case below independently of the justice Department under 12 U.S.C. 1464(d)(1), has asserted that the process of allowing or disallowing claims is an administrative 'adjudication' subject to judicial review under the Administrative Procedure Act. The Solicitor General does not endorse that position; instead, he defends the judgment below to the extent that it requires a creditor to present his claim to the FSLIC and exhaust the claims review process before suing on the claim." Nevertheless, here the FSLIC continues to assert it has exclusive adjudicatory powers over the creditors' claims.

Since we conclude the superior court is not divested of jurisdiction, we need not address ABC's due process and constitutional concerns.

[9] That section provides: "Notwithstanding any other provision of law, . . . any civil action, suit, or proceeding to which the [FSLIC] shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and (C) the [FSLIC] may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court . . . [*p*]*rovided* that any action, suit, or proceeding to which the [FSLIC] is a party in its capacity as conservator, receiver, or other legal custodian of an insured State-chartered institution and which involves only the rights or obligations of investors, creditors, stockholders, and such institution under State law shall not be deemed to arise under the laws of the United States." (Italics original.)

[10] For the purpose of acknowledging that creditors' claims are proceeding to judicial adjudication in federal district court, we take judicial notice of *Alex Tucker Development Corp.* v. *Vernon Savings & Loan Association* (S.D.Cal. 1988) [Dock. No. 88-0445]).

District. We do not believe that court would now render the same decision in view of the inconsistency in the state and federal courts which would result.

## II

■■■ Congress created the FSLIC in 1934 (Act of June 27, 1934, ch. 847, § 402, 48 Stat. 1246, 1256) as part of a comprehensive scheme for the nation's banking institutions. Its functions are to monitor savings and loan associations for compliance with federal regulations and to act as conservator or receiver in cases of insolvency of such institutions. It can act for both failed state as well as failed federal savings and loan associations. Congress used as a model for much of the savings and loan association legislation the already existing National Bank Act. (H.R.Rep. No. 1922, 73d Cong., 2d Sess., p. 4 (1934).) The FSLIC regulates savings and loan associations; the Federal Deposit Insurance Corporation (FDIC) regulates national banks. Both the FSLIC and the FDIC are overseen by the FHLBB. The National Bank Act expressly gives creditors of failed national banks the option of presenting their claims for administrative determination or seeking adjudication of such claims in a court of competent jurisdiction. (§ 194.)

The FSLIC contends the failure of Congress to provide for this judicial adjudication permitted to creditors in the FDIC context should be an indication "that Congress intended FSLIC's adjudicative role to be exclusive." At the same time, the FSLIC argues the recent congressional amendment to the Federal Credit Union Act in which Congress appears to have reaffirmed the National Credit Union Administration Board's (NCUAB) power to adjudicate liquidation claims should be applied to the FSLIC as the FSLIC was used "as a template for NCUAB's powers."

We disagree. First, the language cited is not in the amendment, but appears only in a Senate report. Second, if Congress had intended to convey adjudicatory powers to the FSLIC as it purportedly did to the NCUAB, it had a similar opportunity to do so in 1982 when it amended statutory provisions governing the FSLIC's receivership functions to clarify and augment both the FSLIC's and the FDIC's powers as receivers. It did not do so. The legislative history of this amendment expresses clear congressional intent the FDIC and the FSLIC have parallel authority over their respective institutions. (Sen.Rep. No. 97-536, 2d. Sess., p. 7 (1982); 1982 U.S. Code Cong. & Admin. News, at p. 3054.) We are not persuaded that Congress intended to convey powers to the FSLIC that were not conveyed to the FDIC.

The parties do not dispute that *depositors'* claims may be judicially litigated against both the FDIC and the FSLIC. Rather, the FSLIC urges that *creditors* be denied adjudication of their claims so as to allow the orderly liquidation of failed institutions free of inconsistent judicial rulings. However, since depositors who have claims may proceed to litigate such claims in any court of competent jurisdiction without regard to the possibility of inconsistent judicial rulings state by state and/or district by district, this argument lacks merit.

None of the statutory provisions relied upon by the FSLIC sets forth the exclusive adjudicatory powers it seeks: 1. Section 1464(d)(6)(C) states: "Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the Board, restrain or affect the exercise of powers or functions of a conservator or receiver."

The FSLIC asserts judicial adjudication of creditors' claims would "restrain or affect" the exercise of its receivership powers in violation of this section. We read this section as an indication that Congress expected judicial review of receivership functions of the FSLIC and subjected such review to certain limitations which do not normally apply to state receiverships. Adjudication is not a restraint nor does it necessarily affect the exercise or powers of a receiver. The California Supreme Court in *Webster* v. *Superior Court* (1988) 46 Cal.3d 338 [250 Cal.Rptr. 268, 758 P.2d 596] held court adjudication of disputed claims does not interfere with a receivership or its assets except to resolve the existence of a claim and determine the amount of the claim that the receiver must consider in its eventual liquidation and distribution. Section 1730(k)(1) affords the assets of the receivership further protection. It states in relevant part: "No attachment or execution shall be issued against the Corporation or its property before final judgment in any action, suit, or proceeding in any court of any State or of the United States or any territory, or any other court."

This particular limitation on the powers of a court of competent jurisdiction is ignored and made meaningless by the argument of the FSLIC that there is no court of competent of jurisdiction for the adjudication of claims in the first place.[11] Just as was the *Morrison-Knudsen* court at page 1216, we are puzzled as to the logic which approves judicial review after the administrative process, necessarily delaying the liquidation of the insolvent

---

[11] The FSLIC has not explained why Congress would have adopted the language in section 1730(k)(1) designating which court, federal or state, was to be involved in adjudicating disputes, if no court had such jurisdiction in the first instance.

institutions, but concludes initial adjudication to be an impermissible restraint or affect on the receivership.

2. Section 1729(b)(1)(B) mandates the FSLIC " . . . shall pay all valid obligations of the association." FSLIC's contention that this section implies that it not only must pay, but that it alone should determine the validity of such claims is strained and unsupported by the language.

3. Section 1729(d) provides: "In connection with the liquidation of insured institutions, the Corporation shall have power to carry on the business of and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the Federal Home Loan Bank Board. . . ."

The FSLIC contends that these are exclusive adjudicatory powers and are "necessary" to accomplish its goal of orderly liquidation of failed institutions. In support of this argument the FSLIC recites court congestion and delay, different statutes of limitations for various claims, and the "special expertise" of the FSLIC and the FHLBB "as to the vast majority of contested claims against receivership assets." In light of the statutory provisions of this state which regulate the timing and content of these state claims for mechanics' liens and stop notices as well as the mandatory dismissal for delays in trial prosecution, we do not find these arguments persuasive. (Civ. Code, §§ 3144-3172.) We are similarly unconvinced the FSLIC and the FHLBB have "special expertise" in the area of the claims before us which were created by the state Legislature specifically for the protection of California material workers, suppliers and subcontractors who improve real property in this state. This is not the type of claim referred to by the FSLIC involving "loans, real estate transactions, and securities law issues that are heavily regulated by the Bank Board." This argument might have applied in the context of *FSLIC* but this further supports our decision not to follow that case, since the claims before us are of a decidedly different nature.

In conclusion, we hold the statutes before us do not demonstrate a congressional intent to divest state courts of the power to adjudicate disputed state claims.

## III

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

The trial court did not reach the merits of the issue of exhaustion of administrative remedies.

Based on the supplemental briefing by the parties, we conclude there would be no purpose served in remanding the case to the superior court as there are no facts in dispute. The California state law doctrine of exhaustion of administrative remedies which is a prerequisite to filing an action against a local governmental agency and the state itself does not apply. It is jurisdictional. (Gov. Code, § 900 et seq.) ▮ Under federal law, contrary to the FSLIC's argument, exhaustion of administrative remedies in this context is a matter of the court's discretion; it is not jurisdictional. (*Morrison-Knudsen Co., Inc.* v. *CHG International, Inc., supra,* 811 F.2d at p. 1223.) It is a judicially created doctrine which furnishes a court with a method to exercise comity toward administrative agencies while protecting the rights of parties who have come before a court seeking relief. In exercising its discretion, a court may allow the action to proceed immediately; it may dismiss the action pending exhaustion of administrative remedies; it may stay its own proceedings pending administrative review. (*Rodrigues* v. *Donovan* (9th Cir. 1985) 769 F.2d 1344, 1349.) ▮ The court must consider several factors and balance the agency's interest against the interests of private parties in obtaining adequate and fair resolution of their claims. Among the factors to be considered before the imposition of an exhaustion requirement is appropriate are: 1) whether resort to the administrative remedies would be futile; 2) whether the process is well understood and well developed; 3) whether a prompt decision as to all contested issues in the case is likely; 4) whether an exhaustion requirement would be fair to the parties in light of their resources; 5) whether it would be fair to other parties in the case whose interests might be affected; 6) whether the interests of judicial economy would be served by requiring exhaustion; and 7) whether the agency demonstrates that not requiring exhaustion would unduly interfere with its functioning. (*Morrison-Knudsen Co., Inc.* v. *CHG Intern. Inc., supra,* 811 F.2d at pp. 1223-1224.) ▮ After consideration of these factors, we hold the FSLIC's administrative procedures are inadequate.

Here, no administrative remedies were available when the state court assumed jurisdiction, and no governmental entities were before the court. There were only private parties litigating claims.

ABC filed its complaint in 1986. The law firm which now represents the FSLIC answered the complaint on behalf of the savings and loan and denied ABC's claims. Thereafter, the FSLIC declared the savings and loan insolvent. Now, the FSLIC argues that ABC must exhaust administrative remedies by presenting a claim which FSLIC has already indicated it disputes. ABC complied with the only administrative procedure it was afforded when it submitted a claim in June 1988 after receiving notice to do

so by the FSLIC in March. After six months, the FSLIC's response was that the claim was being "retained for further review." There is admittedly no time frame in any regulation in which the FSLIC must act on the claim. This case would have been tried by November 1988.

The FSLIC has indicated by letter brief that the receiver for this one failed savings and loan association, Vernon, had in its possession as of January 31, 1989, 1,006 claims totalling $2.599 billion, and that the FSLIC has taken no action on 98 percent of these claims. It has approved 218 claims totalling $799,000—an average amount for approved claims of $3,665.14. Ninety-seven claims have been disallowed totalling $49.5 million—an average disapproved claim of $510,309.28. Ninety-eight and four-tenths percent of the dollar value of claims have, therefore, been disapproved. Now these claimants will probably seek judicial adjudication of such disapprovals. The FSLIC estimated that it can decide the remaining claims within six months from the date that notice of "retained for further review" was sent to the creditor. It adds a caveat—"unless the claim involves extraneous litigation to complicate the matter." It offers neither an explanation of this phrase nor any indication of how, when it took seven months to process two percent of the claims submitted to it, it can now process the remaining ninety-eight percent in the next six months.

It appears to us ABC's claim has disappeared into the infamous "black hole" of FSLIC administrative proceedings. In *Coit Independence Joint Venture* v. *Federal Savings and Loan Insurance Corporation, supra*, 489 U.S. 561 [103 L.Ed.2d 602], the claim has been pending for more than 19 months. To require ABC to exhaust such an illusory remedy would serve no purpose except to delay judicial resolution of its claim.

Furthermore, the FSLIC in its letter brief argues that ABC's right to priority, "if such right exists," is not in jeopardy; ". . . *if* ABC is able to prove its right to a priority payment, then the Receiver will be bound to honor that priority and make full payment to ABC." (Italics original.)

In a report from the General Accounting Office dated March 3, 1987, entitled "Thrift Industry: The Treasury/Federal Home Loan Bank Board Plan for FSLIC Recapitalization," the FSLIC was declared insolvent.

ABC has no adequate administrative remedy in this case because the FSLIC stands in the same position as any other bankrupt debtor, and ABC will therefore have no more rights than any other creditor of a bankrupt debtor if ABC prevails on its claims.

Therefore, we hold ABC does not have to exhaust any further administrative remedies. ABC may proceed to litigate its claim in state court.

### DISPOSITION

The judgment is reversed. ABC awarded costs on appeal.

Todd, Acting P. J., and Benke, J., concurred.