811 F.2d 1209
 55 USLW 2481
 MORRISON-KNUDSEN CO., INC., a California and Delaware
Corporation, Plaintiff- Appellee,
v.
CHG INTERNATIONAL, INC., a Washington Corporation, et al., Defendants,
and
Stevenson Associates, a limited partnership, Defendant-Appellant.
STEVENSON ASSOCIATES, a limited partnership, Plaintiff-Appellant,
v.
FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Receiver
for Westside Federal Savings and Loan Association,
et al., Defendants-Appellees.
AMERICAN FEDERAL SAVINGS AND LOAN ASSOCIATION, a federally
chartered association having its principal office
in Oklahoma, Plaintiff-Appellant,
v.
WESTSIDE FEDERAL SAVINGS AND LOAN ASSOCIATION, a federally
chartered association having its principal office
in Washington, etc., Defendant- Appellee.
In re CHG INTERNATIONAL, Debtor.
CHG CREDITORS' COMMITTEE, Plaintiff-Appellee,
v.
FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, as Receiver
for Westside Federal Savings and Loan Association,
Defendant-Appellee.
Wayne C. REMBOLD, Plaintiff,
v.
GIBRALTAR SAVINGS OF WASHINGTON and Queen City Inc., also
known as Gibraltar Savings of Washington and Queen
City Inc.,
Defendant/Counterclaimant/Cross-
Claimant/Appellant,
v.
WESTSIDE FEDERAL SAVINGS AND LOAN ASSOCIATION, Additional
Counterclaim/Cross-Claim/Defendant/Appellee,
v.
REMBOLD CORPORATION, an Oregon corporation, Third Party Defendant.
 Nos. 86-2063, 86-2081, 86-3621, 86-3646, 86-3658.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 3, 1986.
Decided Feb. 25, 1987.
 
 William F. Abrams, Patricia S. Brody, San Francisco, Cal., for Stevenson Associates.
 William K. Black, Washington, D.C., Christine A. Murphy, Laura R. Craft, San Francisco, Cal., John D. Alkire, Joseph E. Bringman, Seattle, Wash., for Federal Sav. and Loan Ins. Corp., as Receiver for Westside Federal Sav. and Loan Ass'n.
 David Lieberworth and Scott G. Warner, Seattle, Wash., for Gibraltar Sav. of Washington, F.A. and Queen City, Inc.
 Martin T. Crowder, Bruce J. Borrus, Seattle, Wash., for CHG Creditors' Committee.
 E. Michele Moquin, John J. Sullivan, Seattle, Wash., for American Federal Sav. & Loan Ass'n.
 Appeal from the United States District Court for the Northern District of California.
 Appeal from the United States District Court for the Western District of Washington.
 Appeal from the United States District Court for the Western District of California.
 Before SNEED, KENNEDY and BEEZER, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 The five appeals consolidated here present the question whether the Federal Savings and Loan Insurance Corporation (FSLIC) has exclusive jurisdiction to adjudicate claims against the assets of an insolvent thrift association placed in a FSLIC receivership. FSLIC contends not only that it has the power to adjudicate such claims, but that judicial jurisdiction is limited to reviewing the agency's determinations under the Administrative Procedure Act. The Fifth Circuit accepted FSLIC's position in North Mississippi Savings & Loan Association v. Hudspeth, 756 F.2d 1096 (5th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 790, 88 L.Ed.2d 768 (1986). See also Chupik Corp. v. FSLIC, 790 F.2d 1269 (5th Cir.1986) (reaffirming Hudspeth ). Our examination of the legislative materials leads us to a contrary conclusion. We hold that FSLIC has no power to adjudicate creditor claims. Notwithstanding this FSLIC disability, we hold that exhaustion of administrative remedies may be a basis for dismissal or stay of proceedings, and remand for further consideration.
 
 I.
 FACTS
 
 2
 On August 30, 1985, exercising its power under 12 U.S.C. Sec. 1464(d)(6)(A), the Federal Home Loan Bank Board (the Board) appointed FSLIC receiver for the insolvent Westside Federal Savings and Loan Association (Westside). The cases appealed here arise out of Westside's troubled pre-receivership financial affairs.
 
 
 3
 In No. 86-3658, a borrower from another thrift association brought a state court suit in Oregon for a declaration that his two million dollar repayment obligation was void. The defendant, Gibraltar Savings of Washington, impleaded Westside as a third-party defendant, alleging that Westside had guaranteed repayment in the event of default. Gibraltar then removed the action to federal court; FSLIC became Westside's receiver in the interim. After being substituted for Westside as party to the suit, FSLIC moved to dismiss Gibraltar's third-party claim for lack of subject matter jurisdiction, taking the position that claims against the assets of a FSLIC receivership fell within the agency's exclusive original jurisdiction. The district court agreed, relying on the Fifth Circuit's Hudspeth decision, and granted FSLIC's motion.[1] Gibraltar appeals.
 
 
 4
 In No. 86-3621, Westside lent CHG International Corporation (CHG) $6.5 million to develop certain property for a state convention center, the loan being secured by trust deeds on the subject property. CHG defaulted on the loan, declared bankruptcy, and gave Westside a quitclaim deed to the development property in satisfaction of its loan obligations. American Federal Savings and Loan Association then sued Westside in federal district court, claiming that it had entered into a participation agreement with Westside under which American Federal bought a 95 percent share in this loan and Westside was to continue collecting payments as trustee. American Federal sought declaratory relief on the validity of the various agreements, an order quieting title, and damages. When FSLIC became receiver for Westside, it moved to dismiss. The court granted the motion, also relying on Hudspeth, and American Federal appeals.
 
 
 5
 In Nos. 86-2081 and 86-2063, Morrison-Knudsen Company built condominia under a contract with the above-mentioned CHG. When the latter went bankrupt, Morrison-Knudsen (after obtaining permission from the bankruptcy court) brought suit in a California state court against CHG, Westside, and all other parties claiming an interest in the property. The company sought both contractual damages and foreclosure of its lien. One of the defendants, Stevenson Associates (Stevenson), having sold CHG some of the land at issue, cross-claimed against Westside on the basis of certain financing agreements among CHG, Westside, and itself. Stevenson also sought both monetary and equitable relief. FSLIC, after its appointment as receiver, removed the cases to federal court, whereupon all claims against it were dismissed once again in reliance on Hudspeth. Stevenson appeals the dismissal of both Morrison-Knudsen's claims against FSLIC and its own cross-claims.
 
 
 6
 Finally, in No. 86-3646, Westside filed a separate, $62 million claim in CHG's bankruptcy proceedings. The CHG Creditors Committee (the Committee), appointed by the bankruptcy court to represent CHG's unsecured creditors, entered a complaint against Westside seeking to subordinate Westside's interests on equitable grounds. FSLIC, having become receiver, moved the supervising district court to dismiss, asserting that the complaint was a claim against one of Westside's assets and as such within FSLIC's exclusive jurisdiction. The district court denied the motion, and FSLIC appeals.
 
 II.
 JURISDICTION
 
 7
 In Nos. 86-3658, 86-3621 and 86-2081--the dismissals of Gibraltar's, American Federal's, and Stevenson's claims against FSLIC--the district courts entered final judgment against the appellants. We therefore have jurisdiction under 28 U.S.C. Sec. 1291. The other two cases present more difficult issues.
 
 
 8
 In No. 86-2063 Stevenson appeals the dismissal of Morrison-Knudsen's claims against Westside. It is hornbook law that "a party may only appeal to protect its own interests, and not those of a coparty." Libby, McNeill, & Libby v. City Nat'l Bank, 592 F.2d 504, 511 (9th Cir.1978). Stevenson, simply as co-defendant, may not appeal the dismissal of an additional defendant from Morrison-Knudsen's original claims, without itself being a party-plaintiff to those claims. See Bryant v. Technical Research Co., 654 F.2d 1337, 1343 (9th Cir.1981). This is so despite Stevenson's assertion that its position may be affected in some way by the ultimate resolution of Morrison-Knudsen's claims against FSLIC. An indirect financial stake in another party's claims is insufficient to create standing on appeal. SEC v. Securities Northwest, Inc., 573 F.2d 622, 626 (9th Cir.1978). A purely speculative concern about the eventual result of a co-party's case is likewise insufficient. See United States v. 5.96 Acres of Land, 593 F.2d 884, 887 (9th Cir.1979). Stevenson's direct interests as against FSLIC are protected by its own appeal in No. 86-2081, which we consider below. Its asserted, indirect interests in Morrison-Knudsen's claims against FSLIC cannot sustain the appeal in No. 86-2063. That appeal must therefore be dismissed.
 
 
 9
 In No. 86-3646, FSLIC appeals the denial of its motion to dismiss the Committee's claim for equitable subordination. A refusal to dismiss is not a final order and hence is not appealable under 28 U.S.C. Sec. 1291. A motions panel of this court previously ruled that we had jurisdiction here under 28 U.S.C. Sec. 1292(a)(1). We cannot agree, however, and are bound to note a defect in appellate jurisdiction whenever one appears. See Fed.R.Civ.P. 12(h)(3).
 
 
 10
 Section 1292(a)(1) authorizes appeals from interlocutory orders granting or refusing injunctions. FSLIC requested dismissal, not an injunction. Even characterizing FSLIC's motion as a request to stay the Committee's claim, the district court's refusal to stay would still be unappealable under this section because the underlying claim is solely for equitable rather than legal relief. See Mediterranean Enters. v. Ssangyong Corp., 708 F.2d 1458, 1462 (9th Cir.1983).
 
 
 11
 Nor do we have jurisdiction under section 1292(a)(2), which permits an interlocutory appeal from orders "refusing ... to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property." 28 U.S.C. Sec. 1292(a)(2). In declining to dismiss an action arising within CHG's bankruptcy proceedings, the district court was not refusing either to wind up Westside's receivership or to take any concrete step toward the accomplishment thereof. Cf. Garden Homes, Inc. v. United States, 200 F.2d 299, 300 (1st Cir.1952) (denial of motion to dismiss receivership case not appealable under this section).
 
 
 12
 FSLIC also argues that its motion presented a claim of sovereign immunity and that the district court's refusal to dismiss is therefore an appealable collateral order under Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 41 (1985). As will be discussed more fully below, FSLIC contends that the statutory provisions which purportedly vest the agency with exclusive jurisdiction over claims against receivership assets may also be viewed as a limitation on Congress's waiver of FSLIC's sovereign immunity. Even assuming that the Forsyth rule applies to an agency's immunity as well as an individual's, FSLIC's effort to recharacterize its essential argument as a sovereign immunity claim is disingenuous. If the pertinent statutes indeed confer upon FSLIC exclusive jurisdiction over the matters at issue, then the sovereign immunity issue does not arise. If they do not, then the immunity contention is unavailing. The sovereign immunity terminology is otiose; it adds nothing to FSLIC's argument. We do not believe that a sovereign immunity claim in this posture is sufficiently "serious," see Nixon v. Fitzgerald, 457 U.S. 731, 743, 102 S.Ct. 2690, 2697, 73 L.Ed.2d 349 (1982), or "substantial," see Forsyth, 472 U.S. at 524, 105 S.Ct. at 2815, to sustain an appeal under the collateral order doctrine.
 
 
 13
 Nor, finally, does this dismissal otherwise qualify as an appealable collateral order under Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Cohen applies only to orders that cannot be reviewed effectively on appeal from final judgment. See Forsyth, 105 S.Ct. at 2815-16. This is not such an order. FSLIC's asserted right to adjudicate the Committee's claim can be fully reviewed and, if necessary, fully restored on subsequent appeal. See United States Tour Operators Ass'n v. TWA, 556 F.2d 126 (2d Cir.1977) (refusal to dismiss on grounds of an agency's primary jurisdiction not appealable under Cohen ); Thill Sec. Corp. v. New York Stock Exch., 469 F.2d 14 (7th Cir.1972) (refusal to refer a case to an agency on grounds of primary jurisdiction not appealable under Cohen ). The appeal in No. 86-3646 must therefore be dismissed as well.
 
 III.
 STANDARD OF REVIEW
 
 14
 Our review of a district court's determination that it lacked subject matter jurisdiction is de novo. See Boettcher v. Secretary of Health & Human Servs., 759 F.2d 719, 720 (9th Cir.1985). The standard for reviewing FSLIC's interpretation of the statutes here at issue is a bit more complicated.
 
 
 15
 Reviewing courts must ordinarily accord "considerable weight" to an agency's construction of its governing statutory scheme. Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). We have recognized that FSLIC's interpretation of the statutes and regulations it must enforce is entitled to such deference. See Horizon Mut. Sav. Bank v. FSLIC, 674 F.2d 1312, 1316 (9th Cir.1982). But deference will not save an agency interpretation that is contrary to clear congressional purpose. See Chevron, 467 U.S. at 843 n. 9, 104 S.Ct. at 2782 n. 9; Zarr v. Barlow, 800 F.2d 1484, 1486 (9th Cir.1986).
 
 
 16
 As set forth below, the legislative history, the particular provisions upon which FSLIC relies, and the entire statutory scheme leave us convinced that Congress intended not to confer on FSLIC the adjudicatory power it seeks. We reach this conclusion well aware of the utility of FSLIC's interpretation. "The problem is that [the statute] does not establish it." Hart v. McLucas, 535 F.2d 516, 520 (9th Cir.1976). We must therefore reject FSLIC's position notwithstanding the deference that ordinarily it would be due.
 
 IV.
 CONGRESSIONAL INTENT
 A. Statutory Framework and Background
 
 17
 Congress created FSLIC in 1934. See Act of June 27, 1934, ch. 847, Sec. 402, 48 Stat. 1246, 1256. Its creation formed part of a network of regulatory bodies established to guard against and to deal with future failures in the nation's banking institutions. Under the Board's supervision, FSLIC has two essential functions: first, to monitor savings and loan associations for compliance with federal regulations; second, in cases of insolvency, to act as conservator or receiver. In the latter instances, the Board and FSLIC oust the officers previously in charge and take control of the association's assets and liabilities. FSLIC may attempt to set the association's affairs on a sound footing, to merge it with a solvent concern, or in extreme cases to liquidate the assets entirely.
 
 
 18
 In the event of liquidation, FSLIC must promptly reimburse depositors out of its insurance fund. It then satisfies nondepositor creditors' claims to the extent that the association's assets permit. The agency in this context becomes both the holder of the claimed assets and, because subrogated to the reimbursed depositors' rights, the single largest claimant against such assets. FSLIC generally recoups a considerable portion of its insurance payouts through its own participation as claimant in the subsequent distribution of assets.
 
 
 19
 The instant cases arise in the liquidation context, and it is the likelihood of FSLIC being a claimant that intensifies its interest in its position in these cases. This interest also feeds upon a growing concern. FSLIC's insurance fund currently is under an unprecedented strain. From 1934 through 1980, FSLIC had to pay out to depositors in only thirteen instances. See Grant, The FSLIC, Fed. Home Loan Bank Board J., Feb. 1981, at 9, 9. Its total cost in resolving all default prevention cases during this period was $0.5 billion. Chamberlain, Protecting America's Savings, Fed. Home Loan Bank Board J., May/June 1983, at 10-11. Since then, however, the "nationwide deterioration of the savings and loan industry," Independent Bankers Ass'n v. Fed. Home Loan Bank Bd., 557 F.Supp. 23, 25 (D.D.C.1982), has increased FSLIC's burden dramatically. More than four hundred thrift associations failed from 1981 to 1984. Comment, The "Brokered Deposit" Regulation, 33 UCLA L.Rev. 594, 607 (1985). In 1981 and 1982, FSLIC spent more than four times what it had in the preceding forty-five years. Chamberlain, supra, at 12. These circumstances lead FSLIC to argue strenuously that rapid recoupment of its insurance payouts through prompt liquidations is highly important to maintaining its reserves, and that judicial adjudication of creditors' claims against receivership assets will produce a delay in this recoupment deleterious to FSLIC's financial interests.
 
 
 20
 We respect FSLIC's desire to maintain its reserves and share its concern over the currently pressing problems in the thrift industry. Nonetheless, we must in this case obey statutes enacted before the difficulties that now confront FSLIC. We are not free to effect a wholesale revision of an agency's statutory authority in response to changed national conditions. FSLIC never in its fifty year history advanced the argument that Congress vested it with exclusive adjudicatory powers over creditor claims until the 1980's. In the few pre-1980 cases involving such claims against FSLIC, no trace of this argument will be found. See, e.g., Baker v. F & F Inv. Co., 489 F.2d 829, 837-38 (7th Cir.1973); Hancock Fin. Corp. v. FSLIC, 360 F.Supp. 1125 (D.Ariz.1973), aff'd, 492 F.2d 1325 (9th Cir.1974). This would not defeat FSLIC if it were the fact that the statute permits it to adjudicate creditors' claims. We now examine the statutory provisions upon which it relies.
 
 B. Provisions Relied Upon by FSLIC
 
 21
 1. Section 1464(d)(6)(C) and Hudspeth.
 
 
 22
 FSLIC's assertion of adjudicatory power rests first on 12 U.S.C. Sec. 1464(d)(6)(C). It reads:
 
 
 23
 Except as otherwise provided in this subsection, no court may take any action for or toward the removal of any conservator or receiver, or, except at the instance of the Board, restrain or affect the exercise of powers or functions of a conservator or receiver.
 
 
 24
 (Italics supplied.) FSLIC asserts that judicial adjudication of creditors' claims would "restrain or affect" the exercise of its receivership powers in violation of this statutory command. This is FSLIC's strongest argument. The Fifth Circuit in Hudspeth was persuaded, but we are not.
 
 
 25
 The Hudspeth court reasoned that judicial "resolution of even the facial merits of claims ... would delay the receivership function of distribution of assets" and that "such a delay is a 'restraint' within the scope of the statute." Hudspeth, 756 F.2d at 1102. The court held that FSLIC had exclusive original jurisdiction to adjudicate creditors' claims, subject only to judicial review under the Administrative Procedure Act. Id. at 1103. We reject this reasoning.
 
 
 26
 First, its logic is flawed. If judicial review, which will delay--perhaps by years--the liquidation process, does not restrain or affect a receiver, then why does initial adjudication by a court of creditors' claims do so? Hudspeth provides no answer. Section 1464(d)(6)(C) does not speak in terms of the magnitude of such restraint or effect.
 
 
 27
 Second, and more important, section 1464(d)(6)(C) does not add to FSLIC's receivership powers; it simply prohibits courts from interfering with those powers, which FSLIC must derive from other statutory sources. Thus the essential question under section 1464(d)(6)(C) is whether FSLIC's receivership "powers or functions" include adjudication of creditor claims. Yet the Hudspeth opinion makes no reference to any statutory language or legislative history indicating a congressional intent to confer adjudicatory power upon FSLIC in its receivership capacity. What has not been conferred cannot be derived by pointing to the time-consuming tasks that FSLIC as a receiver must undertake. At bottom FSLIC merely asserts that it could do its job faster and more efficiently if it had adjudicatory power. Perhaps true, but if Congress did not provide that adjudication would be among FSLIC's receivership functions, the agency may not use section 1464(d)(6)(C) to achieve that result.
 
 
 28
 The rock upon which FSLIC's arguments break is that a receiver's ordinary functions do not include adjudication. Judicial adjudication, to repeat, does not restrain or affect a receivership; it simply determines the existence and amount of claims that a receiver is to honor in its eventual distribution of assets. Cf. Morris v. Jones, 329 U.S. 545, 549, 67 S.Ct. 451, 454, 91 L.Ed. 488 (1947) ("The establishment of the existence and amount of a claim against the debtor in no way disturbs the possession of the liquidation court, in no way affects title to the property, and does not necessarily involve a determination of what priority the claim should have."). FSLIC's basic contention is that Congress intended the agency's receivership powers to go beyond those of an ordinary receiver. It has not established its case. Hudspeth in effect permitted section 1464(d)(6)(C) to expand FSLIC's receivership authority. We decline to do so.
 
 2. Board Regulations
 
 29
 To buttress its statutory argument, FSLIC relies on certain regulations enacted by the Board which require creditors to "present their claims, with proof thereof" to FSLIC once the agency has become receiver. Thereafter FSLIC is directed to
 
 
 30
 allow any claim seasonably received and proved to its satisfaction. The receiver may wholly or partly disallow any creditor claim or claim of security, preference, or priority not so proved, and shall notify the claimant of the disallowance and the reason therefor.... Unless, within 30 days after notice is mailed, the claimant files a written request for payment regardless of the disallowance, disallowance shall be final, except as the Board may otherwise determine.
 
 
 31
 12 C.F.R. Sec. 549.4(b) (1986). FSLIC insists, and the Fifth Circuit evidently concluded, that this administrative process embraces adjudication of claims. See Hudspeth, 756 F.2d at 1102-03. We disagree.
 
 
 32
 We recognize that when an agency has been authorized to make rules covering a certain field, that agency's regulations are valid unless they are "arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 844, 104 S.Ct. at 2782. We readily acknowledge that Congress has given the Board "power to make rules and regulations for the ... liquidation, and dissolution of associations, ... and for the conduct of [FSLIC] receiverships." 12 U.S.C. Sec. 1464(d)(11). The regulations quoted above pass the Chevron test, and we recognize their validity. They do not, however, confer on FSLIC the power to adjudicate. FSLIC, in arguing otherwise, confuses its ample discretion with an adjudicatory power.
 
 
 33
 Receivers traditionally may require documentation of a creditor's claim. FSLIC, not being under the immediate direction of a court in its receivership capacity, is empowered to liquidate assets without a court order, subject only to regulation by the Board. To this extent FSLIC's powers are greater than those possessed by most ordinary receivers. FSLIC and the Board must be permitted to exercise some judgment before paying a claim against a thrift institution. Paying or refusing to pay, however, is not an adjudication of a claim. The language of the regulation does not purport to give FSLIC the power to enter conclusive factual and binding legal findings. FSLIC is no more an adjudicator under this regulation than is an insurance company authorized to "disallow" any claim not proved to its satisfaction and required to notify claimants thereof. The administrative process that the regulation prescribes authorizes FSLIC and the Board, by disallowance of a claim and notice to the claimant, to determine whether a dispute exists. It does not empower FSLIC to resolve the dispute with the force of law. When a claimant notifies the receiver that in his view his disallowed claim is nonetheless valid, there is nothing in the regulation that makes that objection a legal nullity as to FSLIC. The finality of FSLIC's disallowance if the claimant does not object within the specified time is not the result of adjudication; it is the ordinary consequence of waiver. That is, acceptance by the claimant of disallowance signifies that no genuine dispute exists. There is nothing to adjudicate. Thus the administrative process ends precisely where the adjudicative process begins.[2]
 
 
 34
 Our analysis is supported by the fact that Congress has given the Federal Deposit Insurance Corporation (FDIC) the same powers by statute that the Board has given FSLIC by regulation: to receive "legal proof" of creditors' claims and to pay only on "such claims as may have been proved to [its] satisfaction." See 12 U.S.C. Secs. 193, 194, 1821(d). But the FDIC has never claimed, and no court has ever found, that these powers vest the liquidating agency rather than the district courts with the ultimate power to adjudicate creditors' claims. See, e.g., First Empire Bank--New York v. FDIC, 572 F.2d 1361 (9th Cir.), cert. denied, 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).
 
 3. Section 1729(b)(1)(B)
 
 35
 FSLIC contends that its regulations should be interpreted to embrace adjudicatory power because a congressional purpose to that effect can be divined. For example, it points to 12 U.S.C. Sec. 1729(b)(1)(B) in which Congress directs that FSLIC, if appointed receiver, "shall pay all valid credit obligations of the association." Who determines "validity" is not specified. FSLIC takes the position that it has been given that power.
 
 
 36
 A bare duty to pay debts does not imply the power to decide finally, subject only to review under the Administrative Procedure Act, what debts must be paid. The addition of the word "valid" does not alter this. The word is necessary because a duty to pay must not embrace "invalid" claims. The words "shall pay" or "valid" do not imply a grant of adjudicatory powers. Such an interpretation imposes an unreasonable burden on the plain meaning of simple and straightforward language.
 
 4. Section 1729(d)
 
 37
 Finally, FSLIC rolls into position 12 U.S.C. Sec. 1729(d), which provides:
 
 
 38
 In connection with the liquidation of insured institutions, the Corporation shall have power to carry on the business of and to collect all obligations to the insured institutions, to settle, compromise, or release claims in favor of or against the insured institutions, and to do all other things that may be necessary in connection therewith, subject only to the regulation of the Federal Home Loan Bank Board.
 
 
 39
 Not surprisingly, FSLIC claims that adjudication of creditor claims is "necessary" to orderly liquidation. While FSLIC knows better than we what is "necessary" to the accomplishment of its duties, it once more seeks to burden a word, in this case "necessary," with more weight than it reasonably can carry.
 
 
 40
 In addition, we note that the statute, by explicitly authorizing FSLIC to "settle, compromise, or release" claims, delineates powers that not only are distinguishable from the power to adjudicate, but are to some extent incompatible with it. Settlement and compromise strongly suggest the presence of the power of the other party to take the dispute to court. Settlement and compromise are to avoid that result. A body with the power to say "yes" or "no" with the force of law has much less need to settle or to compromise.
 
 
 41
 Finally, whatever force section 1729(d) has, the section does not exist in a vacuum. An entire statutory scheme surrounds it. "And it is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute (or statutes on the same subject) and the objects and policy of the law...." Brown v. Duchesne, 60 U.S. (19 How.) 183, 194, 15 L.Ed. 595 (1857), quoted in Stafford v. Briggs, 444 U.S. 527, 535, 100 S.Ct. 774, 780, 63 L.Ed.2d 1 (1980). The entire statutory framework strongly suggests that Congress intended FSLIC to be a receiver, not an adjudicator. Had it intended the latter, we are confident it would have given substantial attention to the procedural and substantive rights of claimants as well as the rights, duties, and responsibilities of FSLIC.
 
 
 42
 C. Provisions Contradicting FSLIC's Position
 
 
 43
 1. Powers as a Supervisor Compared With Powers as a Receiver
 
 
 44
 FSLIC's position is further undermined by examination of the manner in which Congress treats its role as a receiver as compared to its role as a supervisor of thrift institutions. Liquidation powers referred to in section 1729(d) are specifically granted to FSLIC as "receiver" for a failed association. 12 U.S.C. Sec. 1729(b)(1)(A); see id. Sec. 1464(d)(6)(D). Common law receivers have never in ordinary practice had the power to adjudicate claims; that power remains vested in the courts. As already indicated, FSLIC is unable to locate a single explicit indication in the legislative history or the language of its governing statutes that Congress intended or expected FSLIC to adjudicate claims as part of its receivership functions.[3]
 
 
 45
 On the other hand, in the role of supervising ongoing thrift associations, FSLIC and the Board have been empowered by Congress to adjudicate violations of federal law, to issue cease-and-desist orders, to remove offending officers, and to impose civil penalties. See 12 U.S.C. Secs. 1464, 1730. The statutes conferring this authority, occupying several pages in the United States Code, provide detailed, exact, and comprehensive measures precisely delineating agency procedure, the remedies available, and judicial review. They make explicit reference to review under the APA. See 12 U.S.C. Secs. 1464(d)(7)(A), 1730(j)(2). The inference is irresistible that had Congress any intention of permitting FSLIC to adjudicate in its capacity as receiver, similar provisions--or provisions having a similar purpose--would have been enacted. Indeed, it is unreasonable to conclude that, although FSLIC and the Board are painstakingly circumscribed in adjudicating cases in their supervisory role, as to which their administrative expertise is greatest, neither is circumscribed in adjudicating as a receiver.
 
 
 46
 2. Statute of Limitations Applicable to Suits By Depositors
 
 
 47
 Another persuasive indicator consists of the provisions governing FSLIC's duties as insurer. Congress enacted in 1954 a special statute of limitations applicable to depositor actions against the agency. See 12 U.S.C. Sec. 1728(c). The language used indicates unambiguously that Congress anticipated judicial adjudication in the event of a disputed claim. See Jugum v. FSLIC, 637 F.Supp. 1045, 1047 (W.D.Wash.1986). This being so, the logical inference is that FSLIC may adjudicate neither depositors' nor creditors' claims. To assume that FSLIC must litigate depositors' claims, with which it has great expertise, but may adjudicate creditors' claims against the institution in receivership, as to which its expertise is much less, is not a rational interpretation of the statutory scheme.
 
 3. The Jurisdictional Section of the Act
 
 48
 In section 1730(k)(1), there is further evidence of Congress's tacit assumption that claims against FSLIC's receivership assets would be amenable to judicial resolution. That section provides:
 
 
 49
 Notwithstanding any other provision of law, ... (B) any civil action, suit, or proceeding to which the Corporation [FSLIC] shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and (C) the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court... Provided, That any action, suit, or proceeding to which the Corporation is a party in its capacity as conservator, receiver, or other legal custodian of an insured State-chartered institution and which involves only the rights or obligations of investors, creditors, stockholders, and such institution under State law shall not be deemed to arise under the laws of the United States.
 
 
 50
 12 U.S.C. Sec. 1730(k)(1).
 
 
 51
 Appellant creditors, encouraged by this section, insist that because these cases do not fall within the proviso clause, the dismissals below for lack of jurisdiction were improper. Their argument is too broad. In granting federal courts jurisdiction over "any" action to which FSLIC is a party (ignoring for a moment the proviso), Congress did not intend to repeal all other jurisdictional limitations. Indeed, on appellants' theory, a district court would have jurisdiction even if a suit against FSLIC raised only a moot or political question. Section 1730(k)(1)(B) does not do this. It is manifestly concerned (as both subparagraph (C) and the proviso make clear) with distributing between state and federal courts the jurisdiction over suits that must be brought in court. Subparagraphs (B) and (C) do not address how the initial distribution of jurisdiction between administrative and judicial tribunals, be the latter state or federal, is to be accomplished.
 
 
 52
 Nonetheless, the proviso clause, which is designed to keep certain actions in state courts, see Hancock Fin. Corp. v. FSLIC, 492 F.2d 1325, 1327 (9th Cir.1974), indicates what type of suits Congress expected FSLIC to defend against in state courts. The statute expressly includes an action against FSLIC "in its capacity as ... receiver ... which involves only the rights ... of ... creditors." There is no intimation that Congress intended to treat differently federally-chartered and state-chartered associations. Instead, there is every indication that Congress intended the agency's powers to be identical in both situations. See, e.g., 12 U.S.C. Sec. 1729(c) (granting FSLIC the "same powers" as receiver for state associations as it has for federal ones, and making applicable the same restrictions on judicial review). Thus we conclude that Congress clearly expected creditors' suits against FSLIC as receiver to be heard and adjudicated in court.
 
 4. The FDIC Experience
 
 53
 The FDIC experience also weakens FSLIC's position taken in this case. We have already drawn attention to this. The FDIC has appeared frequently before this court as plaintiff or as defendant in creditors' actions in favor of or against the receivership bank. See, e.g., FDIC v. Bank of Am. Nat'l Trust & Sav. Ass'n, 701 F.2d 831 (9th Cir.), cert. denied, 464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983); First Empire Bank, 572 F.2d at 1361; Argonaut Sav. & Loan Ass'n v. FDIC, 392 F.2d 195 (9th Cir.), cert. denied, 393 U.S. 839, 89 S.Ct. 116, 21 L.Ed.2d 110 (1968). Congress quite recently amended the statutory provisions governing FSLIC's receivership functions in an act that clarified and augmented both FSLIC's and the FDIC's powers as receiver. See Garn-St. Germain Depository Institutions Act of 1982, Pub.L. No. 97-320, Sec. 122, 96 Stat. 1469, 1480-83 (codified at 12 U.S.C. Sec. 1729). It easily could have distinguished FSLIC's adjudicatory authority from that of the FDIC. It did not do so. The legislative history of that act indicates that Congress meant to give both agencies parallel authority over their respective institutions. See S.Rep. No. 536, 97th Cong., 2d Sess. 7, 1982 U.S.Code Cong. & Admin News 3054. Because FSLIC only recently has found itself defending controverted creditor claims in its receivership capacity, we regard the FDIC's longstanding interpretation of the receiver's role, acquiesced in by Congress, as very persuasive authority.
 
 5. The Northern Pipeline Problem
 
 54
 Finally, we cannot sweep under the rug the serious constitutional difficulties that attend FSLIC's assertion of adjudicatory jurisdiction. The power to make binding determinations of fact and law, thus establishing or dissolving individuals' contractual rights subject only to Administrative Procedure Act review, is a power that in our system must be measured out very carefully. We need not assert, as appellant creditors would have it, that FSLIC's adjudication of their claims would be unconstitutional under Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). But neither are we persuaded, as FSLIC argues, that the powers it seeks easily survive Northern Pipeline scrutiny.
 
 
 55
 That a governmental agency is party to these suits does not permit an escape from the reach of Northern Pipeline. See Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 105 S.Ct. 3325, 3336, 87 L.Ed.2d 409 (1985). Looking to the "substance" of the rights here, see id., it seems plausible that each of the creditors' claims presents "a 'private' right," not a "public right," and, therefore, is a claim "assumed to be at the 'core' of matters normally reserved to Article III courts." Commodity Futures Trading Comm'n v. Schor, --- U.S. ----, 106 S.Ct. 3245, 3259, 92 L.Ed.2d 675 (1986).[4] Nor have these creditors consented to agency adjudication as had the parties in Schor. See id., 106 S.Ct. at 3257. Additionally, FSLIC is mistaken in asserting that its factual findings (if it were to adjudicate these claims) would be reviewable under the "weight of the evidence" test approved of in Schor, id. at 3259. In the absence of specific congressional direction, review would proceed according to the Administrative Procedure Act, under which the "arbitrary and capricious" standard might well be applicable, see 5 U.S.C. Sec. 706(2)(A), or at best the "substantial evidence" standard, see id. Sec. 706(2)(E), which still is more deferential than "weight of the evidence" review, see Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966).[5]
 
 
 56
 It is not necessary for us to pass on these matters. We reject FSLIC's interpretation because it raises these "serious" constitutional difficulties, which the statutes can quite "fairly be read" to avoid. Schor, 106 S.Ct. at 3252. It may be that with careful limitations like those governing FSLIC's adjudication of regulatory violations, Congress could have crafted an adjudicatory jurisdiction for FSLIC in its receivership capacity that would pass constitutional muster. We are convinced it has not attempted to do so.
 
 6. Congressional Intent Summarized
 
 57
 To sum up, we conclude that FSLIC's assertion of adjudicatory power in its receivership capacity is unsupported by the statutory language and inconsistent with congressional intent. The two-tiered framework Congress has established for FSLIC (as for the FDIC) is clear and coherent. As overseer of ongoing associations, the agency stands above the insured institutions and has important but well-defined adjudicatory powers to ensure compliance with federal law. As receiver for failed associations, however, FSLIC stands in the shoes of the insured institution. It takes over assets and liabilities, and it assumes full operational control in its own name. It is empowered and indeed obliged to pay all valid depositors' and creditors' claims up to certain limits in orderly fashion and without immediate judicial supervision. It may settle or release these claims with the consent of claimant parties as it sees fit in order to accomplish this task more efficiently. But when a claim is disputed and agreement cannot be reached, FSLIC is obliged to attend court just as the institutions it represents would have had to do.
 
 V.
 FSLIC'S IMMUNITY
 
 58
 FSLIC also invokes its qualified immunity as receiver and its absolute sovereign immunity as a federal agency to support dismissal of the creditors' claims. Neither contention has merit.
 
 
 59
 Receivers ordinarily enjoy a qualified immunity from personal liability for actions taken within their receivership authority. See, e.g., Leonard v. Vrooman, 383 F.2d 556 (9th Cir.1967), cert. denied, 390 U.S. 925, 88 S.Ct. 856, 19 L.Ed.2d 985 (1968). But neither FSLIC nor any agent thereof is being sued in a personal capacity, or for liability incurred through FSLIC's receivership conduct. Instead, the creditors sue FSLIC as receiver of the thrift association that allegedly owes them a debt. In this capacity FSLIC bears an express duty to pay such claims if they indeed are valid. See 12 U.S.C. Sec. 1729(b)(1)(B). FSLIC enjoys no immunity from suit brought against it in that capacity.
 
 
 60
 FSLIC's claim to sovereign immunity is equally groundless. Congress has explicitly provided that the FSLIC may "sue and be sued, complain and defend, in any court of competent jurisdiction in the United States." 12 U.S.C. Sec. 1725(c)(4). Unless Congress clearly directs otherwise, such "sue and be sued" language waives an agency's sovereign immunity. See Federal Hous. Admin. v. Burr, 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940); FDIC v. Citizens Bank & Trust Co., 592 F.2d 364, 369 (7th Cir.), cert. denied, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979). FSLIC attempts to show, using the same arguments described above, that sections 1464(d)(6)(C) and 1729(d) were meant to limit the waiver of sovereign immunity effected by section 1725(c)(4). For the reasons already discussed at length, we find no such intent expressed in those sections.
 
 VI.
 EXHAUSTION OF REMEDIES
 
 61
 Although we hold that there was jurisdiction below, we conclude that the district courts on remand should further consider exhaustion of administrative remedies.
 
 
 62
 Where there is no explicit statutory requirement of exhaustion of administrative remedies, the application of exhaustion rules is a matter committed to the discretion of the district court. Wong v. Department of State, 789 F.2d 1380, 1385 (9th Cir.1986); Rodrigues v. Donovan, 769 F.2d 1344, 1349 (9th Cir.1985). The judicially-created exhaustion doctrine does not limit jurisdiction. Wong, 789 F.2d at 1384; Rodrigues, 769 F.2d at 1348. Rather, it furnishes the district court with a method to exercise comity toward administrative agencies and to promote efficient use of judicial resources while protecting the rights of parties who have come before the court seeking relief.
 
 
 63
 In exercising its discretion to decline jurisdiction, or to stay proceedings, the district court must balance the agency's interest in applying its expertise, correcting its own errors, making a proper record, and maintaining an efficient, independent administrative system, against the interests of private parties in finding adequate redress. Wong, 789 F.2d 1380, 1384 (9th Cir.1986); Montgomery v. Rumsfeld, 572 F.2d 250, 253 (9th Cir.1978). The district court may allow the action to proceed immediately, it may dismiss the action pending exhaustion of administrative remedies, or it may stay its own proceedings pending administrative review. Rodrigues, 769 F.2d at 1349 n. 4; Montgomery, 572 F.2d at 253-54. In most cases, particularly where a statute of limitations problem might develop, the third alternative may represent the best accommodation of the competing interests. See Montgomery, 572 F.2d at 253-54.
 
 
 64
 In the cases before us, the district courts dismissed the actions for lack of subject matter jurisdiction without engaging in the balancing process described above. We therefore remand the cases so that the district courts can determine whether the imposition of an exhaustion requirement would be appropriate in the particular situations before them. Among the factors that should be considered are whether resort to the administrative process would be futile, whether the administrative process is well understood and well developed, whether a prompt decision as to all of the contested issues in the case is likely, whether an exhaustion requirement would be fair to the parties in light of their resources, whether it would be fair to other parties in the case whose interests might be affected, whether the interests of judicial economy would be served by requiring exhaustion, and whether the agency demonstrates that not requiring exhaustion would unduly interfere with its functioning.
 
 
 65
 Application of the exhaustion rule under these principles will suffice to ensure respect to the administrative jurisdiction of FSLIC, while also protecting the rights of parties who assert claims against it.
 
 
 66
 Nos. 86-3658, 86-3621, and 86-2081 REVERSED AND REMANDED.
 
 
 67
 Nos. 86-2063 and 86-3646 DISMISSED for lack of appellate jurisdiction.
 
 
 
 [1]
 The decision below is reported as Rembold v. Gibraltar Sav. & Loan Ass'n, 624 F.Supp. 1006 (W.D.Wash.1985)
 
 
 [2]
 In addition, the Board has issued substantially similar regulations applicable to depositors' claims. See 12 C.F.R. Sec. 549.5-1 (1986). FSLIC cannot maintain that these regulations allow it to adjudicate depositors' claims, because Congress has clearly provided for judicial adjudication. See 12 U.S.C. Sec. 1728(c); Jugum v. FSLIC, 637 F.Supp. 1045, 1047 (W.D.Wash.1986). We have difficulty perceiving how a single administrative process may be adjudicative for creditors but non-adjudicative for depositors
 
 
 [3]
 Our independent review of FSLIC's statutes and legislative history has produced the same result. We did uncover, however, one item in an analogous area, unmentioned by any of the parties, which indirectly supports FSLIC's position. The National Credit Union Administration Board (NCUAB) oversees credit unions much as FSLIC and the Board oversee savings and loan associations. The NCUAB administers an insurance fund and may also appoint a "liquidating agent" in cases of insolvency. See 12 U.S.C. Secs. 1766, 1783, 1787. In section 1766, passed in 1946, Congress has authorized this liquidating agent "to receive, examine, and pass upon all claims against the Federal credit union in liquidation." 12 U.S.C. Sec. 1766(b)(3) (emphasis added). The accompanying Senate Report states that the provisions in which this phrase appears "are similar to those which are customarily prescribed in other types of liquidations and would authorize, for example, ... the receipt and adjudication of claims." S.Rep. No. 1647, 79th Cong., 2d Sess. 2, reprinted in 1946 U.S.Code Cong.Serv. 1323, 1324. This passing comment in the Senate Report offers some evidence that Congress may have thought in 1946 that other "liquidating agents" in the banking industry ordinarily adjudicated the claims presented to them. If Congress so thought, it was mistaken. Federal receivers of insolvent banks have never had the power conclusively to adjudicate creditor claims. See First Nat'l Bank v. National Pahquioque Bank, 81 U.S. (14 Wall.) 383, 20 L.Ed. 840 (1872); Schulenberg v. Norton, 49 F.2d 578, 580 (8th Cir.1931). In any case, section 1766(b)(3) along with its legislative history is so remote from the cases at bar that it cannot affect our decision. Without more it is too slender a reed to support FSLIC's construction of its own statutory authority
 
 
 [4]
 It is true, however, that the creditors' claims involve generally "the restructuring of debtor-creditor relations," which the Northern Pipeline plurality indicated as a possible area of public rights. See 458 U.S. at 71, 102 S.Ct. at 2871. However, the Northern Pipeline plurality appears to have been referring solely to actions that arise under federal bankruptcy law, see id.; Thomas, 105 S.Ct. at 3336, and the instant claims do not do so. Indeed, in the case of state-chartered associations (to which FSLIC extends its assertion of adjudicatory receivership power, see FSLIC v. Superior Ct., 180 Cal.App.3d 336, 225 Cal.Rptr. 422 (1986)), Congress has expressly directed that creditor actions against FSLIC do not arise under federal law. See 12 U.S.C. Sec. 1730(k)(1) (proviso clause). And, in the case of federal thrifts, if FSLIC denies that Congress's grant of district court jurisdiction applies to the instant claims, then it must also deny that they arise under federal law, because both the jurisdiction and the law are provided for in the same statutory section. See 12 U.S.C. Sec. 1730(k)(1)(B). We do not decide here any issues as to the governing law; we simply express our concern that FSLIC may well be seeking to adjudicate matters of state contract law reserved to Article III courts
 
 
 [5]
 The "substantial evidence" test applies under the APA only to agency adjudications "required by statute to be determined on the record after opportunity for an agency hearing," or to an administrative "hearing provided by statute." 5 U.S.C. Secs. 554(a), 706(2)(E). FSLIC's administrative process for handling creditor claims appears to involve no "hearing" at all. If that is true, the "arbitrary and capricious" standard would be controlling. This standard might be even more deferential than the "clearly erroneous" test found deficient in Northern Pipeline. See 458 U.S. at 85, 102 S.Ct. at 2878 (plurality opinion)